26330. JOHNSTON et al. v. THE STATE.

SUBMITTED FEBRUARY 8, 1971—DECIDED MARCH 4, 1971—
REHEARING DENIED MARCH 18, 1971.

388

*Adams, O'Neal & Hemingway, Manley F. Brown,* for appellants.

*Jack J. Gautier, District Attorney, Whitney T. Evans,* for appellee.

FELTON, Justice. ■ The affidavit submitted to the judicial officer as the basis for issuing the search warrant in the case of defendant Johnston reads as follows: "On August 26, 1969, an informer told officers that subject had in his room and automobile above described a large quantity of narcotic and dangerous drugs not obtained on prescription. Upon checking, officers determined that this informer was in a position to have seen these narcotic drugs as described by him. Officers also determined that this subject was in the office of Dr. Reese Eberhardt on Houston Avenue on August 25, 1969, and requested narcotic drugs of Dr. Eberhardt, but was refused. Officers also checked and determined that this subject does have a lodging at Room No. 219 at said Howard Johnson's Motor Lodge.

"Officers learned that Johnston was accompanied to Dr. Eberhardt's office by Mike Russell who was staying in Room 217 of the Howard Johnson's Motor Lodge, and that Mike Russell used the same name, age and address as that of subject.

"It was from the informer that officers learned of the visit to Dr. Eberhardt's office."

The affidavit in defendant Russell's case is identical, with the exceptions that his room number is specified as No. 217 and the penultimate paragraph reads as follows: "Officers also learned that while subject was in Dr. Eberhardt's office he used the name of John Johnston and the same age and address as John Johnston who was at the time staying in Room 219 of the said Howard Johnson's Motor Lodge and who accompanied him to Dr. Eberhardt's office."

(a) Appellants object that the above affidavits contain no data as to informer reliability. ". . . [W]here the officer relies upon an informant he must give sufficient information of the underlying circumstances from which he concluded that the informant was reliable. [Cits.] In his affidavit should appear a recital of what the informant actually said, and why the officer thought that the information was credible *(Peters v. State,* 114 Ga. App. 595 (152 SE2d 647)), especially when the name of the informant is not stated." *Burns v. State,* 119 Ga. App. 678, 683 (168 SE2d 786) and cit. We do not construe the holding, requiring a recital of what the informant *actually* said, as to require that the informant's *exact* words be quoted. The case of Beck v. Ohio, 379 U. S. 89, 97 (85 SC 223, 13 LE2d 142), cited and quoted from in *Peters v. State,* supra, p. 597, held merely that "when the constitutional validity of that arrest was challenged, it was incumbent upon the prosecution to show *with considerably more specificity than was shown in this case* what the informer actually said." (Emphasis supplied.) As long as the substance of his statement is fairly stated there is compliance with this requirement. The statement, that the informant told officers "that subject had in his room and automobile above described a large quantity of narcotic and dangerous drugs not obtained on prescription," was sufficient for this purpose. As far as the informant's reliability, this was shown by the alleged "underlying circumstances" of the officers' verification of the informant's information as to the defendants' places of lodging, vehicles description and activities, as well as their determination that the informant had been "in a position to have seen these narcotic drugs as described by him." "[I]nsufficiency of the affidavit does not appear from the fact alone that *some or all* of the facts recited come from information furnished by others *(Strauss v. Stynchcombe,* 224 Ga. 859 (2) (165 SE2d 302)), if there is substantial basis for crediting the hearsay. [Cits.]" *Burns v. State,* supra, p. 682.

As to the contention that the affidavits contain no underlying facts as to how the informant obtained his information, the only reasonable inference from the statements, that the informant had stated that the defendants had the illicit drugs and that it had been determined that he had been in a position to have seen them, is that he had personally observed the things about which

he told the police officers. Such an inference as to informant reliability can be made when the magistrate is confronted with such detail (Spinelli v. United States, 393 U. S. 410, 417 (89 SC 584, 21 LE2d 637)), and is not inconsistent with the fact that the State has the burden of proving that the search and seizure were lawful. *Code Ann.* § 27-313 (b) (Ga. L. 1966, pp. 567, 571).

It is also contended that the affidavits lack data as to the time when the informant obtained his information. "A 'prime element in the concept of probable cause is the time of the occurrence of the facts relied upon.' *Fowler v. State,* 121 Ga. App. 22, 23 (172 SE2d 447)." *Windsor v. State,* 122 Ga. App. 767 (178 SE2d 751). The Court of Appeals in the *Fowler* case stated further on p. 23, however, that "it was not necessary that the precise date of the occurrence be given but it should appear from the facts that the occurrence should be so near in point of time to the making of the affidavit and the execution of the search warrant as to create a reasonable belief that the same conditions described in the affidavit still prevailed at the time of the issuance of the warrant." In determining the probability that the defendants still possessed the illicit drugs when the warrant was issued, the judicial officer could consider the facts, which appear from the affiant's sworn statements and affidavits, that the defendants were out-of-state transients, temporarily staying in a motel, and that on the day before they had unsuccessfully attempted to obtain a narcotic drug from a local physician by fraud, deceit, misrepresentation, subterfuge, forgery, alteration, concealment of a material fact, use of a false name, or the giving of a false address, or a combination of the above, in violation of *Code Ann.* § 79A-819 (Ga. L. 1967, pp. 296, 342), which is a misdemeanor. *Code Ann.* § 79A-9910 (Ga. L. 1967, pp. 296, 374; Ga. L. 1970, p. 461). While the Spinelli case, supra, p. 415, rejected the "totality of circumstances" approach in cases where the informant's tip is a necessary element in the finding of probable cause, the court reaffirmed its previous holding, "that the magistrate is obligated to render a judgment based upon a common-sense reading of the entire affidavit. United States v. Ventresca, 380 U. S. 102, 108 (1965)." Furthermore, in this case reliance was not placed solely upon the informant's tip, but his information was corroborated and amplified by independent investigation.

On page 419, the Spinelli case stated as follows: "In holding as we have done, we do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, Beck v. Ohio, 379 U. S. 89, 96 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, McCray v. Illinois, 386 U. S. 300, 311 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, United States v. Ventresca, 380 U. S. 102, 108 (1965); and that their determination of probable cause should be paid great deference by reviewing courts, Jones v. United States, 362 U. S. 257, 270-271 (1960)."

The facts as stated in the affidavits, taken as true, constitute a sufficient showing of probable cause. See *Campbell v. State,* 226 Ga. 883, 885 (178 SE2d 257).

(b) We must now decide the question of whether or not the sworn evidence before the judicial officer, considered in its totality, justified the issuance of the search warrant. *Campbell v. State,* supra, p. 886.

The affiant testified, at page 8 of the transcript of evidence, that he gave the following sworn oral testimony to the judicial officer: That the informant told the affiant that he had personally observed the narcotics; that the officers had checked different places and with different people to verify the truth of the informant's statements; that the officers determined from the motel register that the defendants had checked into the motel some three days prior to the search; that the informant knew the automobiles and the correct numbers of the rooms the defendants had rented; that the officers had personally conversed with Dr. Eberhardt and learned from him that the defendants were examined by Dr. Eberhardt, who was suspicious because of faked symptoms on the part of one of them, their request for strong pain killing drugs, and because both of them gave the same name; that affiant had given the informant's name to the judicial officer; and that the informant had in fact described the narcotics. The fact that the informant told the affiant that the drugs were either in the cars or in the rooms, does not show that the information was not timely or

reliable, since the drugs could have been, and apparently were, so easily and quickly transferred from one location to the other. The above was a sufficient showing of probable cause to justify the issuance of search warrants.

■ Appellants attack the constitutionality of *Code Ann.* § 79A-903 (b, 3) (Ga. L. 1967, pp. 296, 344; Ga. L. 1970, pp. 470, 471), which forms the basis of Count 2 of both indictments and which provides as follows: "(b) The term 'depressant or stimulant drug' means: . . . 3. Any drug which contains any quantity of a substance designated by *present* regulations promulgated under the *Federal Act* as having potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect." (Emphasis supplied.) It is contended that this statute, construed in pari materia with *Code Ann.* § 79A-102 (g) (Ga. L. 1967, pp. 296, 299), which defines "Federal Act" so as to include all amendments to and all regulations promulgated by the Commissioner of the Federal Food and Drug Administration under the Federal Food, Drug and Cosmetic Act of the United States of America, is an invalid delegation of legislative power to Congress in that it undertakes to make future Federal legislation a part of the law of this State upon that subject. See *Featherstone v. Norman,* 170 Ga. 370, 393 (153 SE 58, 70 ALR 449). Regardless of whether or not § 79A-102 (g), supra, may have the contended effect upon any other sections in this Title, it does not have such effect upon § 79A-903 (b, 3) for the reason that the express language therein limits the regulations which are to be applicable to *"present* regulations," which means those existing at the time of the enactment of § 79A-903 (b, 3). "When a statute adopts a part or all of another statute, domestic or foreign, general or local, by specific and descriptive reference thereto, the adoption takes the statute as it exists at that time. The subsequent amendment or repeal of the adopted statute or any part thereof has no effect upon the adopting statute." *Featherstone v. Norman,* supra, p. 394. Had the General Assembly used "regulations" with no adjective, or used a term such as "regulations to be promulgated, etc." or "subsequently enacted regulations," etc., appellants' contention might have merit. It follows that the statute under attack is not an unconstitutional delegation of legislative power by the General Assembly.

Furthermore, the amendment to the Federal Act which expressly included the drug LSD as a "depressant or stimulant drug," was enacted in 1966, hence was a part of the Federal Act at the time of its adoption by the Georgia General Assembly in 1967.

■ The enumerated error on the overruling of the motion for a new trial is not argued, hence is deemed abandoned.

■ The court did not err in its judgment for any reason urged.

*Judgment affirmed. All the Justices concur.*