## 48596. BUTLER v. THE STATE.

HALL, Presiding Judge. Sanford Hoyt Butler appeals his conviction for possession of burglary tools.

Late in the night of October 7, 1972, at a shopping mall in Winder, Georgia, the Ace Hardware Company was burglarized and a burglary attempt was made on The Boutique Shop. Officers investigating a citizen's report of suspicious activity at the mall discovered William Joseph Ritzheimer and Faye Allyson Adams near the scene. A third person, later identified as Clifford Wilson, was seen running from the area. During questioning at the scene Ritzheimer pulled a gun on the policemen. He was subsequently disarmed and searched, and found to be in possession of shaved-down locks similiar to those tampered with at the mall, as well as other locks and keys and a pistol. He and Adams were arrested. The beige Chevrolet which Ritzheimer and Adams identified to the officers as their transportation, and in which Adams was seated at the time of the gunplay, was searched with a warrant revealing a sizeable collection of burglary tools. The auto was found to be registered in the name of Sanford Hoyt Butler, appellant here. In subsequent statements to the officers, Ritzheimer and Adams identified Wilson as their companion at the scene, and stated that they and Wilson were staying at 201 Copeland Road, Apartment E-2, Atlanta, Georgia. With an arrest warrant for Wilson the officers entered the apartment and discovered shaved-down tumblers (movable portions of lock mechanisms) in plain view. Obtaining a search warrant, officers searched the apartments and

discovered additional burglary tools. The apartment was leased to Sanford Hoyt Butler.

Butler, Ritzheimer and Adams were jointly indicted and tried for possession of burglary tools, burglary of the hardware company, and attempted burglary of the clothing shop. Wilson had not been apprehended and was not tried. Butler was convicted of possessing burglary tools, but was acquitted of the other charges. The jury fixed his sentence at one year's imprisonment and recommended that the offense be treated as a misdemeanor. The judge imposed sentence but refused the recommendation. Our decision upon Adams' appeal of her conviction was previously reported in 129 Ga. App. 839 (201 SE2d 649). Ritzheimer's pro se appeal is reported in 130 Ga. App. 319.

On this appeal, Butler raises five enumerations of error of which th first is the denial of his motion to suppress the items seized in the auto search and the introduction of the same into evidence over his objection at trial. He argues that the warrant was issued without probable cause.

1. Code Ann. § 27-303 (Ga. L. 1966, pp. 567, 568) allows a warrant to issue upon a showing of facts "sufficient to show probable cause that a crime is being committed, or has been committed . . ." The test of probable cause is whether it would justify a man of reasonable caution in believing that an offense has been or is being committed, and this requires merely a probability — less than a certainty but more than a mere suspicion or possibility. 68 AmJur2d 721, Searches and Seizures, § 68; see *Strauss v. Stynchcombe,* 224 Ga. 859, 865 (165 SE2d 302); *McMahan v. State,* 125 Ga. App. 491, 492 (188 SE2d 183). Not only what is stated in the affidavit for the warrant but also the totality of the sworn circumstances before the magistrate may be considered in establishing probable cause. *Johnson v. State,* 227 Ga. 387 (181 SE2d 42); *Campbell v. State,* 226 Ga. 883 (178 SE2d 257); *Marshall v. State,* 113 Ga. App. 143 (147 SE2d 666).

The affidavit stated that burglary tools and firearms were to be searched for as "tangible evidence of the commission of the crime(s) of burglary that was committed on 10-7-72 at 11:55 p.m. at Ace Hardware and Boutique Shop at Holly Hill Mall and that the facts to establish probable cause for the issuance of a search warrant are as follows: Policeman walked up to people and a pistol was pulled on officers and also had a call on vehicle with people checking stores and also three doors broke open in shopping center — one person run. The above automobile was

identified as being their transportation." The affiant, Gerald Thomas, Chief of Police of the City of Winder, additionally testified under oath to the magistrate that the officers had found lock cylinders and a pistol in Ritzheimer's pocket prior to seeking the warrant.

Contrary to appellant's contentions, there is no requirement that probable cause for the issuance of a warrant be set out only in that section of the printed affidavit form designated "Probable Cause" (which followed the colon in the affidavit quoted above). The affidavit is to be read "as a whole," United States v. Ventresca, 380 U. S. 102, 111 (85 SC 741, 13 LE2d 684). A "commonsense reading of the entire affidavit" is all that is required. Spinelli v. United States 393 U. S. 410, 415 (89 SC 584, 21 LE2d 637); *Clyatt v. State,* 126 Ga. App. 779, 782 (192 SE2d 417). When grounds for a search warrant appear on the face of the printed search warrant form, the fact that the grounds may be stated in the wrong place on the form is immaterial. United States v. Longfellow, 406 F2d 415 (4th Cir.) cert. den. 394 U. S. 998 (89 SC 1594, 22 LE2d 776). Thus, the affidavit recited the suspicious activities of the two subjects and the actual occurrence of a burglary, and identified the auto to be searched as the subjects' transportation. Additionally, the sworn testimony given the magistrate concerning the contents of Ritzheimer's pockets clearly implicates him in any burglary then afoot. There was probable cause to believe that a crime had been committed and that instruments of that crime would be found in the auto; the magistrate did not abuse his discretion in issuing the warrant. Code Ann. § 27-303. Cf. *Campbell v. State,* supra.

2. The second enumeration of error complains on two grounds of the introduction into evidence of items seized pursuant to the execution of a search warrant at 201 Copeland Road, Apt. E-2, Atlanta. The first asserted ground is that the search warrant was issued without probable cause; the second is that its description of the items to be  seized  was insufficiently particularized and authorized a general search.

The evidence showed that on the evening of the day following the burglary, two officers went to the apartment with an arrest warrant for Clifford Wilson, who was known to live there. Entering the apartment through an open rear door, the officers went through the rooms looking for Wilson. In the bathroom an officer noticed in plain view some ground-down tumblers similar to those found on Ritzheimer at his arrest, and then decided to

procure a search warrant to search the premises.

The affidavit stated the supporting facts as follows: "On 10-7-72 subject William J. Ritzheimer and Faye Adams were arrested at scene of a burglary in Winder, Ga. Sub. Ritzheimer pulled a gun on officer Clifford Sikes. Sub was then disarmed and searched. Found on his person was lock cylinders as the same that had been tampered at burglary scene. Statements were taken from Subs and they gave the above address as where they were staying. Sub. Clifford Wilson was with subjects at scene of crime and an arrest warrant is now out for this subject. Wilson also lives at above address." The items to be searched for were stated as "Locks and keys, files and other burglary tools. Any hardware or clothes from thefts."

At the time of seeking the warrant from the magistrate, Agent Stone, one of the 2 officers, supplemented the facts in the affidavit by his sworn testimony that in the bathroom he had seen the tumblers similar to those found on Ritzheimer.

Answering appellant's first contention, we find the warrant issued with probable cause. No contention is made that the officers improperly entered the apartment, and no contention is made that their passing through the apartment in search of Wilson exceeded a permissible search for a person. This latter contention, had it been made, would have been insupportable. See Dorman v. United States, 435 F2d 385 (D. C. Cir.) The tumblers were burglary tools, the possession of which is a crime under Code Ann. § 26-1602, and the plain view of these tools clearly gave probable cause to believe that a crime was then being committed. With reference to so much of the warrant as authorized a search for burglary tools, our holding that probable cause appeared is squarely supported on parallel facts by United States v. Combs, 468 F2d 1390, 1392 (6th Cir.) cert. den.; United States v. Johnson, 452 F2d 1363, 1372 (D. C. Cir.); and *DePalma v. State,* 228 Ga. 272, 275 (185 SE2d 53), in all of which cases officers rightfully on premises found there in plain view instrumentalities or evidence of crime for which they subsequently sought warrants; the warrants were held to have been issued with probable cause. This holding is supported moreover by *Wood v. State,* 126 Ga. App. 423 (190 SE2d 828) in which this court found that the discovery in such circumstances of a gun did not provide probable cause because possession of a gun in a residence was not a per se legal violation: "Had the firearms been contraband this would have been sufficient . . ."

Id., p. 424. The burglary tools viewed here were contraband, and probable cause for the warrant appeared.

With respect to the search for burglary tools, we find no merit in the second of appellant's contentions, which is that the description of the items to be searched for was too broad. Though specificity is to be desired, "When circumstances make an exact description of instrumentalities, a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking." James v. United States 416 F2d 467, 473 (5th Cir) cert. den. 397 U. S. 907. The description of burglary tools was adequate. Cf. United States v. Wilson, 451 F2d 209 (5th Cir.) cert. den. 405 U. S. 1032 ("paraphernalia for making coins" held adequate.) Nor is the affidavit undercut by the fact that certain items of the type to be sought may be innocent household appurtenances found in other households without criminal connotations. See, e. g., Taylor v. State of Minn., 466 F2d 1119 (8th Cir.) cert. den. 410 U. S. 956.

With respect to probable cause for the search for stolen items and the particulars of their description in the warrant, a more difficult question is presented, but on these facts an answer is not required. We have ruled that the warrant was issued with probable cause for the search of the premises for burglary tools, and this fact authorized a thorough search of the apartment in the course of which any items reasonably believed by the officers to be stolen would have been subject to seizure and to introduction into evidence even if they had not been listed in the warrant at all. As the Supreme Court has said on similar facts, "Our search warrant law provides that when a peace officer is in the process of effecting a lawful search, he is not precluded from seizing any stolen or embezzled property, etc. Code Ann. § 27-303 (e) . . . It was reasonable in the search for burglary tools and narcotics to make a thorough search of the defendant's apartment. When articles of jewelry with the stones missing were found in a dresser drawer, and a pistol with the serial number removed therefrom was found under the mattress of a bed, in an apartment where burglary tools were found, the officers had probable cause to believe that the jewelry and pistol were stolen property and subject to seizure, even though they were not listed on the search warrant. *Campbell v. State,* 226 Ga. 883, 887 (178 SE2d 257)." *DePalma v. State,* supra p. 276. Accord, United States v. Kane, 450 F2d 77 (5th Cir.) cert. den. 405 U. S. 934 (92 SC 954, 30 LE2d 810); *Hutto v. State,* 116 Ga. App.

140, 143 (156 SE2d 498).

Not only may such contraband be seized if related to the crime in connection with which the search is made, but items related to other crimes may also be seized without prior enumeration in the warrant. Harris v. United States, 331 U. S. 145 (67 SC 1098, 91 LE 1399) overruled on other grounds, Chimel v. California, 395 U. S. 752 (89 SC 2034, 23 LE2d 685).

Though the record before us does not reveal whether any of the items seized from the apartment were claimed to be stolen goods, we note that no contention is made here that items not described in either part of the warrant were seized and introduced. We therefore conclude that any items seized here, if other than burglary tools, were stolen goods, and therefore they were subject to seizure even without enumeration in the warrant. On this analysis, so much of the warrant as purported to authorize a search for stolen goods, even if without probable cause, was mere surplusage and its inclusion has not prejudiced appellant nor created reversible error. Where a search as it was actually conducted is lawful, it is not rendered invalid merely because the warrant pursuant to which it was made was overbroad (see United States v. Curwood, 338 FSupp. 1104 (D. Mass.)), or founded upon erroneous beliefs (United States v. Poppitt, 227 FSupp. 73, 77 (D. Del.)).

3, 4. The third and fourth enumerations of error challenge the trial court's refusal to direct a verdict of acquittal at the close of the state's evidence and again at the close of the case.

We agree with appellant's argument that the failure of the trial court to direct a verdict of acquittal *in a proper case* will be reversible error. *Merino v. State,* 230 Ga. 604 (198 SE2d 311). "As we view the statute [Code Ann. § 27-1802 (a)], when there is no conflict in the evidence and it clearly demands a verdict of acquittal as a matter of law there is a *duty* upon the trial judge to grant a motion for a directed verdict of acquittal and his failure to do so will constitute reversible error on appeal." Id., p. 605. Because the evidence against Butler was entirely circumstantial, our inquiry here is whether the evidence construed most favorably to the state could authorize the jury reasonably to find that the evidence excluded every reasonable hypothesis except that of guilt (Code § 38-109); although such evidence need not remove every possibility of Butler's innocence. *Eason v. State,* 217 Ga. 831 (125 SE2d 488). We limit our inquiry to the evidence concerning possession of burglary tools, which was the only count on which Butler was convicted.

The state's evidence showed that Butler owned the automobile in which the burglary tools were found, and he was the lessee of the apartment in which other incriminating items including burglary tools were discovered; the resident manager of the apartment testified that subleasing was forbidden and Butler had represented himself as the sole apartment occupant; Adams, Wilson and Butler all occupied the apartment; Butler lived in Atlanta, Georgia, and the burglary occurred in Winder, Georgia (which, we note, is approximately 50 miles away); Officer Sykes of the City of Winder Police Department testified that he had seen Butler in the beige Chevrolet in Winder one evening "several nights" before the burglary, driving in such a manner that the officer thought he was lost and stopped him to offer assistance; Butler swapped cars with Clifford Wilson on the evening of the burglary, taking back Butler's Toyota that Wilson had been driving and giving Wilson Butler's Chevrolet; Butler's wife told the officers Butler had left with Wilson that evening; Butler testified Wilson swapped the cars without disturbing Butler at dinner with his family and he had left his keys in the car for that purpose; the keyring found in the Chevrolet by officers during their search contained the Chevrolet key, a handcuff key, and a new key fitting the new lock on the Copeland Road apartment door; the apartment locks had been changed prior to the burglary without the permission of the management, so that the manager's passkey would not fit; the day after the burglary the manager saw a U-Haul van backed up to the apartment door and someone, not Butler, carried out what appeared to be luggage; Butler never reported anything stolen from the apartment; Ritzheimer had flown down from Pennsylvania to participate in the burglary and had been outfitted by Wilson with false identification in the name Billy Martin; a box of calling cards or business cards bearing the name Billy Martin was found side by side with a box of cards bearing Butler's name in a closet which appeared to be in Butler's bedroom in the apartment; Ritzheimer told officers he had met Butler on two previous occasions including one time when Butler and Wilson came up to Philadelphia and talked to him; Adams told officers she had heard Wilson and Butler talking a couple of nights before the burglary about the fact that they had a friend who was going to fly down from Pennsylvania; on the Thursday before the burglary on Saturday Adams and Wilson went to the mall and spent a good bit of time looking over the places they

planned to burglarize; the owner of one of the mall shops testified that on that same day he had seen Butler "all over the shopping center" over a period of several hours; Butler admitted he had been to the shopping center but denied that he went inside the mall and stated that he had only gone into a grocery store for cigarettes and then had stopped to speak to someone in the parking lot.

The state's evidence was sufficient to authorize the jury to convict, and the trial court did not err in refusing to direct a verdict of acquittal. Also, the evidence would have been sufficient even without the admission against Butler of his codefendants' statements recited above implicating him to some degree. Though Butler's status as owner of the automobile and lessee of the apartment in which the burglary tools were found, standing alone, need not necessarily lead to the conclusion that he individually "possessed" them, nonetheless circumstantial evidence of his participation in a conspiracy to do so was presented. The trial judge charged at length on conspiracy, and the charge, in which no error is alleged to have occurred, included the instruction, "This agreement [to do an unlawful act] may be established by direct proof or by inference as a deduction from conduct which discloses a common design on the part of the persons charged to act together for the accomplishment of the unlawful purpose," in which event "what was done by another person named in the indictment, in pursuance of the common intent and purpose during the pendency of the conspiracy, would be just as binding upon the defendant as if he had done the act himself." The circumstantial evidence here was ample to authorize the jury to conclude that Butler participated with his codefendants in a conspiracy to possess the tools for the commission of crime. See *Walden v. State,* 121 Ga. App. 142 (173 SE2d 110).

Though Butler took the stand under oath in his defense, the defense consisted entirely of his denials of criminal involvement and denials of the more incriminating elements of the state's case, which could do no more than raise a conflict in the evidence on the basis of which the jury was still authorized to convict under the tests and authorities stated in the first part of this division of our opinion. Evidence much the same as that presented here was held sufficient to convict in *Thomas v. State,* 118 Ga. 774 (45 SE 622). There was no error in refusing to direct a verdict at the close of all the evidence.

5. Finally, appellant enumerates as error a claimed inconsistency between acquittal of burglary and attempted burglary, and conviction of possession of burglary tools which, under Code Ann. § 26-1602 requires the intent to make use of the same in the commission of a crime. Appellant urges that because he was never placed by the state at the scene of the crime, he could only have been prosecuted for burglary on a conspiracy theory; the acquittals on the burglary and attempted burglary counts show that the jury did not accept his participation in the conspiracy, and therefore he could not have been found to have had the requisite intent.

We have ruled above that conviction of possession of burglary tools was authorized. The circumstantial evidence of appellant's involvement in the entire criminal enterprise was such that the jury would have been authorized to convict him not only of possession, but of the other counts as well. The fact that the jury chose to acquit him of the more serious counts does not require us to hold that the element of criminal intent was missing from his possession of the tools. This follows from the fact that possession of burglary tools and burglary are separate and distinct offenses and conviction of one is not an essential part of conviction of the other. *Shelly v. State,* 107 Ga. App. 736 (131 SE2d 135). Cf. *Pat v. State,* 116 Ga. 92 (42 SE 389); *Smith v. State,* 105 Ga. 724 (32 SE 127); *Bell v. State,* 103 Ga. 397 (30 SE 294); *Blair v. State,* 81 Ga. 629 (7 SE 855). The verdicts were not repugnant.

Having determined that the enumerations of error are without merit, we affirm the judgment.

*Judgment affirmed. Evans and Clark, JJ., concur.*

ARGUED SEPTEMBER 17, 1973 — DECIDED NOVEMBER 27, 1973 — REHEARING DENIED DECEMBER 18, 1973 — ■

*Rich, Bass, Kidd & Broome, Casper Rich, Bryan M. Cavan,* for appellant.

*Nat Hancock, District Attorney,* for appellee.