### 29338. SIMMONS v. THE STATE.

HALL, Justice.

Joe G. Simmons was convicted by a jury of murdering his ex-wife by shooting her with a rifle, and on this appeal he presents the single question whether there was probable cause for the search of his house which revealed the rifle in question. The search warrant was based upon affidavits and additional sworn oral testimony by Georgia Department of Investigation Agent Stone and Sheriff Smith. Simmons attacks the warrant on the ground that informants were the source of affiants' information, yet their reliability was nowhere adequately shown.

The trial evidence tended to show that Barbara Simmons, the victim, had arranged to meet one Walt McCannon in a wooded area on the afternoon of October 10, 1973. McCannon arrived in his truck, accompanied by three Negro employees to whom he was giving rides home. He testified that he saw Mrs. Simmons in her automobile, a 1970 Mercury, and leaving his employees to wait for him he joined her. A few moments later, hearing a suspicious noise, he checked the rear of the automobile, saw that the trunk lid was slightly open, and, opening it further, he saw a flash and "a wallowing motion" at which point he ran away into the woods. He heard a scream and a shot, but continued running about a mile to a house from which he telephoned the sheriff. He told the sheriff he had seen a gun barrel protruding from the trunk, held by white gloved hands. The sheriff proceeded to the area but found neither the truck nor the Mercury. The testimony of the three Negro employees was that while they were waiting for McCannon's return Simmons came up carrying a rifle

and wearing white gloves, and embarked upon a course of terrorizing the three men over a period of some hours, compelling them to assist him in moving and damaging the truck, and moving the Mercury. He threatened their lives if they failed to cooperate. Finally Simmons, still accompanied by the three Negro men but now driving a third vehicle, picked up his two sons at school and in their presence dropped the three men off with $2 apiece to buy liquor and a threat to kill them if they told the law enforcement officers of his recent activities.

Simmons' son Joey, 14 years old, corroborated the testimony concerning Simmons' remarks while putting the three men out of the truck; and testified that his father brought his rifle out of the vehicle into the house, and that later that night he had heard his father praying, asking God's "forgiveness for what he'd done."

On the following day, October 11, McCannon found his damaged truck in the woods, and the three employees led authorities to the place where the Mercury had been left. It had suffered gunshot damage to the trunk lid. Mrs. Simmons' body, with a gunshot wound, was discovered in the woods the next day, October 12, hidden beneath an automobile floor mat and a pile of brush. The application for the warrant to search Simmons' home was made, and the warrant was issued, prior to the discovery of the body.

Though the warrant itself was not made part of the record before the superior court either at the hearing on the motion to suppress or at the trial, the probable cause portion of it was read into the record as follows: "Now, in the motion — in the search warrant, the probable cause states that on the 10th day of October, 1973, subject Joe Simmons, who is the defendant, had been identified, or was identified, as the person who kidnapped three colored subjects, and was responsible for the disappearance of Barbara Simmons, and bullet fragments were recovered from the trunk of Barbara Simmons' vehicle and are believed to have been fired by subject Joe Simmons. Subject Joe Simmons had in his possession at the time the crime was committed the M-15 automatic rifle, and removed from the truck owned by Walter McCannon, a 357 Magnum pistol, also owned by Mr. McCannon. Subject Joe Simmons was known to have placed the above

items in his place of residence at approximately 9:30 p.m. on the night of October 10, 1973. Subject is known to have placed in his vehicle a blanket on the night of October 10, 1973."

Simmons' attack on the warrant is based on the fact that the informants are not named therein, as a consequence of which he insists that their reliability must be sworn to under the standards of Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) and certain cases of this court, e.g., *Johnston v. State,* 227 Ga. 387, 389 (181 SE2d 42). Those rulings are inapplicable here.

The purpose of providing details of a confidential informant's reliability is to enable the magistrate to determined whether his "tips" are worthy of credence when he remains anonymous. Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723). The informants here were not anonymous to the justice of the peace issuing the warrant, nor was their method of acquiring their information undivulged. Of course, probable cause may be established not only by the contents of the affidavit but also by sworn oral testimony given the magistrate. *Campbell v. State,* 226 Ga. 883 (178 SE2d 257); *Butler v. State,* 130 Ga. App. 469, 470 (203 SE2d 558); *Moore v. State,* 130 Ga. App. 184, 185 (202 SE2d 555); *Marshall v. State,* 113 Ga. App. 143 (147 SE2d 666). Such sworn testimony, as here, is permitted to show how the informant gained his information. *Fowler v. State,* 128 Ga. App. 501, 503 (197 SE2d 502). The record reflects affiants' trial testimony that in sworn oral testimony to the justice of the peace they detailed the fact that Mrs. Simmons was missing and was feared dead, and the informants were identified to the justice of the peace as the three terrorized Negro victims of the kidnapping and the accused's son, whose names were omitted to protect them. Additionally, Agent Stone testified that ". . . we had the car with what appeared to be bullet holes in the trunk, and had the truck, that had been damaged, and everything just fit right together with what the three Negroes had told us."

Under the two-pronged test of Spinelli, where hearsay such as an informer's tip is relied upon for probable cause, the sworn information placed before the

432

justice of the peace must adequately set forth (1) the
" 'underlying circumstances' necessary to enable the
magistrate independently to judge of the validity . . ." of
the information, and (2) the informant's credibility or
reliability. Spinelli, supra, p. 413. It was unquestioned
that these informants spoke from their personal
knowledge and thus the magistrate was not placed in the
position of accepting without question their mere
suspicion or conclusion which was the evil condemned in
Aguilar, supra, p. 114, and in Spinelli, supra, p. 416.

We hold that the underlying circumstance, made
known to the magistrate, that the informants gave
information from their personal, eyewitness experience,
adequately showed their opportunity to know and
satisfied the first prong of the test. *Young v. Caldwell,* 229
Ga. 653, 654 (193 SE2d 854); *Jackson v. State,* 130 Ga.
App. 6 (202 SE2d 206); *Davis v. State,* 129 Ga. App. 158
(198 SE2d 913). As three of these informants were victims
of lengthy terrorization by Simmons, and the fourth was
his son, their reliability in other, previous circumstances
need not be shown by affiant. See United States v. Mahler,
442 F2d 1172 (9th Cir.) cert. den. 404 U. S. 993; Brown v.
United States, 365 F2d 976 (D. C. Cir. 1966). There was
probable cause for issuance of the warrant. See Code Ann.
§ 27-303; *Dugan v. State,* 130 Ga. App. 527, 528 (203 SE2d
722).

The remaining enumerations of error, being argued
neither orally nor in Simmons' brief, are deemed
abandoned. Supreme Court Rule 18 (c) (2), 226 Ga. 905,
914; *Mitchell v. State,* 226 Ga. 450 (6) (175 SE2d 545).

*Judgment affirmed. All the Justices concur. Hill, J.,
not participating.*

SUBMITTED NOVEMBER 1, 1974 — DECIDED JANUARY 7, 1975.

*Tom Strickland,* for appellant.
*Clete D. Johnson, District Attorney, Arthur K. Bolton,
Attorney General, Lois F. Oakley,* for appellee.