### 29916. SUNDBERG v. THE STATE.

NICHOLS, Chief Justice.

Richard Chason Sundberg was indicted in a two-count indictment for possession of marijuana (Count 1) and for the sale and distribution of Phencyclidine (PCP) (Count 2). A demurrer was filed to the second count of his indictment in which it was contended that Code Ann. § 79A-903 (b) (4) violates Art. 1, Sec. 1, Par. 23 (Code Ann. § 2-123) (separation of powers) and Art. 3, Sec. 1, Par. 1 (Code Ann. § 2-1301) (delegation of legislative power).

The trial court overruled the defendant's demurrer and certified such judgment for immediate review.

The sole question presented by this appeal is whether the delegation of authority to the state board of pharmacy to define depressant and stimulant drugs violated the Constitution. If so, the demurrer should have been sustained; if not, it was properly overruled.

The provision of the Code attacked provides: "The term 'depressant or stimulant drug' means: . . . 4. Any

substance which the State Board shall determine to be habit-forming because of its stimulant effect on the central nervous system or any drug which the State Board shall determine to contain any quantity of a substance having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect: Provided, however, no drug shall be considered as a depressant or stimulant drug if the State Board shall expressly determine that such drug has no depressant or stimulant effect on the central nervous system and has no hallucinogenic effect."

Phencyclidine hydrochloride was found to be a depressant or stimulant drug by the state board of pharmacy. See Rule 480-9.01(3). Rules of the Georgia State Board of Pharmacy.

The Act here attacked has been repealed effective July 1, 1974 (Ga. L. 1974, p. 221) and a new chapter enacted dealing with the same subject matter. This repeal does not affect pending indictments.

In *Johnston v. State,* 227 Ga. 387, 392 (181 SE2d 42), this court questioned the authority of the General Assembly to include in the term depressant or stimulant drug those drugs which might be so declared by some future regulation by a designated federal agency.

"A statute will be held unconstitutional as an improper delegation of legislative power if it is incomplete as legislation and authorizes an executive board to decide what shall and what shall not be an infringement of the law, because any statute which leaves the authority to a ministerial officer to define the thing to which the statute is to be applied is invalid." 16 AmJur2d 506, Constitutional Law, § 257.

The state does not contend that a delegation of power is not involved but takes the position that the guidelines given to the state board of pharmacy are sufficiently restricted to prevent the section of the Act attacked from being an attempted delegation of legislative power to an executive board.

In enacting the Code section attacked, the General Assembly also made a finding and declaration of policy and purposes which read in part as follows: "The General Assembly of the State of Georgia hereby finds that it is

essential to the public health and safety to regulate and control the manufacture, distribution, delivery and possession of depressant and stimulant drugs, and other drugs which have a potential for abuse because of their depressant or stimulant effect on the central nervous system or because of their hallucinogenic effect *as defined in this Chapter.*" (Emphasis supplied.) Ga. L. 1967, pp. 296, 343 (Code Ann. § 79A-902).

The term "depressant or stimulant drug" is then defined in Code Ann. § 79A-903 (b). The term as there defined covers four paragraphs. Subparagraph 1 deals with any drug which contains any quantity of barbituric acid, etc. Subparagraph 2 deals with amphetamines and any substances designated by regulation presently (1967) promulgated under the federal act as habit-forming because of its stimulant effect on the central nervous system. Subparagraph 3 then includes in such term any drug which contains any quantity of a substance designated by present regulations promulgated under the federal act as having potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect.

These subparagraphs are followed by Subparagraph 4, the one under attack.

Simply stated, this paragraph says a depressant or stimulant drug is anything the state board of pharmacy says it is without any real guidelines being treated in such subparagraph. Thus, while the General Assembly may delegate certain powers to the executive branch of government in order to carry out the law as enacted by the General Assembly, yet the subsection of the Act under attack attempted to delegate to the state board of pharmacy the authority to determine what acts (the possession of such substances) would constitute a crime. Under decisions exemplified by *Long v. State,* 202 Ga. 235, 237 (42 SE2d 729) and citations, this attempted delegation of power violates Art. 3, Sec. 1, Par. 1 (Code Ann. § 2-1301), supra, of the Constitution of 1945.

Accordingly, the trial court erred in overruling the demurrer to Count 2 of the indictment.

*Judgment reversed. All the Justices concur, except Jordan, Ingram and Hill, JJ., who dissent.*

ARGUED MAY 12, 1975 — DECIDED MAY 27, 1975.

*Nixon, Yow, Waller & Capers, John B. Long,* for appellant.

*Richard E. Allen, District Attorney, Sam B. Sibley, Jr., Assistant District Attorney,* for appellee.

HILL, Justice, dissenting.

I respectfully dissent. In my view the law in issue here does not say "a depressant or stimulant drug is anything the State Board of Pharmacy says it is without any real guidelines. . ."

The law in issue here (Code Ann. § 79A-903(b)) defines "depressant or stimulant drug" to mean: (1) any drug which contains barbituric acid or its salts, (2) any drug which contains amphetamine or its optical isomers or their salts, (3) any drug designated by federal regulations as having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect, and (4) "Any substance which the State Board shall determine to be habit-forming because of its stimulant effect on the central nervous system or any drug which the State Board shall determine to contain any quantity of a substance having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect. . ."

Subpart (4) should be considered in context, not in isolation, insofar as guidelines are concerned.

Moreover, that subpart contains guidelines. It defines "depressant or stimulant drug" as follows: Any substance which is habit-forming because of its stimulant effect on the central nervous system or any drug containing any quantity of a substance having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect. If written thusly, there would be no invalid delegation of legislative power. There might be a question of vagueness; i.e., insufficient notice to the public. The General Assembly avoided the vagueness (notice) problem by inserting the words "the State Board shall

determine."

The General Assembly created a balanced subsection, providing protection (public and private), guidelines, specificity and notice, by providing the framework and relying on the expertise and determinations of the State Board of Pharmacy to name the drugs fitting the criteria set by law. No one argues that the Board erred in its determination that phencyclidine is a hallucinogenic drug.

The General Assembly did not leave the authority to the board "to define the thing to which the statute is to be applied" (16 AmJur2d 506, Constitutional Law, § 257, supra). The General Assembly left the authority to the board to *name* the drugs to which the statute was to be applied.

The General Assembly did not attempt to delegate to the board the authority to determine what acts would constitute a crime. The General Assembly delegated to the board the authority to determine which new or additional drugs came within the act which had not already been defined by the General Assembly as "depressant or stimulant drugs."

The General Assembly provided guidelines; the real issue here should be whether those guidelines were constitutionally sufficient for determination by the board of pharmacy (not determination by a court). It is not enough to say that a new law with more guidelines could be and has been enacted. Ga. L. 1974, pp. 221, 228.

The new law relates only to Code Ann. Chapters 79A-8 and 79A-9, (Ga. L. 1974, pp. 221, 223), as originally enacted in 1967. The 1974 law does not affect Code Ann. Chapters 79A-1 through 79A-7 and 79A-10 (Ga. L. 1967, pp. 296-380).

The decision of the majority in this case has the effect of making legal the possession and sale of dangerous drugs named by the state board pursuant to 79A-702 (b) of the Dangerous Drugs Act (Ga. L. 1967, pp. 296, 323), to wit: Rule 480-8-.01.

One wonders apprehensively what other effects this decision has on other laws and expert determinations made thereunder.

The decision cited by the majority as controlling,

*Long v. State,* 202 Ga. 235 (42 SE2d 729), is clearly distinguishable. In that case, the General Assembly delegated to Fulton County the power to fix speed limits within that county, which limits were less than that fixed by state law. The Act declared it to be a misdemeanor to violate any county rule or regulation so adopted. The Act contained no guidelines whatsoever.

After citing federal decisions appellant states in his brief: "However, the courts in Georgia have more strictly construed Georgia constitutional provisions which place all legislative functions in the legislative branch," citing, inter alia, *Long v. State,* supra. Appellant then cites decisions from six states which he candidly acknowledges have held contrary to his position. Thus, appellant acknowledges that Georgia courts have more strictly limited legislative delegation than have the courts of other states, not to mention the federal decisions.

In addition to *Long v. State,* supra, consider *Bibb County v. Garrett,* 204 Ga. 817 (51 SE2d 658), and *Campbell v. Farmer,* 223 Ga. 605 (157 SE2d 276), relied on by appellant as authority that the General Assembly cannot delegate its legislative power. The *Long* case was overturned by local constitutional amendment so as to allow Fulton County to regulate traffic. Ga. L. 1967, p. 969. The *Bibb County* case invalidated the delegation to Bibb County of control over its employees pension and insurance plans. It was partially overturned by a local constitutional amendment (Ga. L. 1950, p. 431), and was completely overturned by adoption of the Home Rule for Counties amendment. Code Ann. § 2-8503. The *Campbell* decision involved taxes on agricultural commodities. That decision was overturned by general constitutional amendment. Code Ann. § 2-5501.1.

The significance to me of these several constitutional amendments is that when the General Assembly wants to delegate its legislative power, no judicial decision declaring such delegation invalid will bar that body from accomplishing its objective.

Where, as here, the General Assembly has provided administrative guidelines, the courts should not invalidate the legislative will.

I am authorized to state that Justices Jordan and

Ingram join me in this dissent.