THE STATE OF OHIO, APPELLEE, *v.*
REED, APPELLANT.

(No. 953—Decided July 1, 1983.)

*Mr. Richard G. Ward,* prosecuting attorney, and *Mr. Jack Kellenberger,* for appellee.

*Mr. Edward J. Brown,* for appellant.

STEPHENSON, J. This is an appeal from a judgment of conviction and sentence entered by the Ross County Court of Common Pleas upon a jury verdict finding Gregory Reed guilty of a violation of R.C. 2925.23(B)(1), which proscribes, *inter alia,* the knowing possession of a false or forged prescription. The following errors are assigned:

"I. Valium (diazepam) was not a controlled substance because the legislature unconstitutionally delegated its duty to make criminal law to the State Board of Pharmacy.

"II. The scheduling of Valium (diazepam) as a controlled substance was unconstitutional because the notice required by due process was not given.

"III. The instructions to the jury that Valium (diazepam) was a schedule IV substance was in error because Valium (diazepam) was not a schedule IV substance and the instructions infringed on the jury's province of deciding the facts of the case."

On April 11, 1981, appellant presented to a pharmacist at a drug store in Chillicothe, Ohio, a forged prescription for Valium, which drug contains diazepam and is a controlled substance which has been placed on Schedule IV of R.C. 3719.41 by the State Board of Pharmacy.

Appellant had sought by pretrial motion a dismissal of the indictment upon the basis diazepam was not enumerated by the General Assembly in the enactment of R.C. 3719.41 and the scheduling of the drug by the State Board of Pharmacy was "void as an illegal delegation of legislative power and violates due process." The motion was overruled by the trial court. The refusal to dismiss for the reasons stated form the basis for the first two assignments of error.

Proper disposition of the first two assignments of error requires an overview of the state and federal statutory scheme of drug control. In 1970 the Congress of the United States, in response to the growing problem of drug abuse, enacted a narcotic and dangerous drug

act entitled, Comprehensive Drug Abuse Prevention and Control Act of 1970, in P.L. 91-513, which appears at Section 801 *et seq.,* Title 21, U.S. Code. Effective January 1, 1976, the General Assembly adopted a Controlled Substances Act in Am. Sub. H.B. No. 300 (136 Ohio Laws, Part II, 2311) which appears in R.C. Chapter 3719 and which, essentially, follows the federal act, including adoption in R.C. 3719.41 of the five schedules of drugs appearing in the federal act. Each schedule has its own criteria for placement of a drug in the schedule.

The General Assembly adopted in R.C. 3719.41 the enumerated drugs under the various schedules. That the General Assembly did not intend the drugs listed under the schedule to remain fixed until legislatively changed is reflected both in R.C. 3719.43 and 3719.44. The former section provides, in substance, that when a drug is scheduled, rescheduled, or removed by the United States Attorney General under the criteria under the federal act, the change "is automatically effected in the corresponding schedule or schedules in section 3719.41 of the Revised Code, subject to amendment pursuant to section 3719.44 of the Revised Code."[1]

R.C. 3719.44, in the parts pertinent here, reads as follows:

"(A) Pursuant to this section, and by rule adopted pursuant to Chapter 119 of the Revised Code, the state board of pharmacy may do any of the following with respect to schedules I, II, III, IV, and V established in section 3719.41 of the Revised Code:

"(1) Add a previously unscheduled compound, mixture, preparation, or substance to any such schedule;

"(2) Transfer a compound, mixture, preparation, or substance from one such schedule to another, provided such transfer does not have the effect under Chapter 3719 of the Revised Code of providing less stringent control of such compound, mixture, preparation, or substance than is provided under federal narcotic laws * * * [;]

"(3) Remove a compound, mixture, preparation, or substance from the schedules where the board had previously added the compound, mixture, preparation, or substance to the schedules, provided that the removal shall not have the effect under Chapter 3719 of the Revised Code of providing less stringent control of such compound, mixture, preparation, or substance than is provided under federal narcotic laws.

"(B) In making a determination to add, remove or transfer pursuant to division (A) of this section, the board shall consider the following:

"(1) The actual or relative potential for abuse;

"(2) The scientific evidence of its pharmacological effect of the substance, if known;

"(3) The state of current scientific knowledge regarding the substance;

"(4) The history and current pattern of abuse;

---

[1] R.C. 3719.41 does not include diazepam as a Schedule IV drug. Ohio Adm. Code Chapter 4729 incorporating the regulations of the State Board of Pharmacy reflects in Rule 4729-11-04 the inclusion of diazepam as a Schedule IV drug as of July 2, 1975. Page's Ohio Revised Code Annotated includes in its 1982 Supplement at Section 3719.41 a controlled substance schedule provided by the Ohio State Board of Pharmacy reflecting, *in-* *ter alia,* that the drug diazepam was added to the federal schedule on July 2, 1975 and expressly by the Ohio State Board of Pharmacy to the Ohio schedule on April 1, 1978. In this appeal appellant's assignments of error are directed solely to the action of the State Board of Pharmacy. Hence, we do not reach or consider the constitutionality of the automatic rescheduling provision in R.C. 3719.43.

"(5) The scope, duration, and significance of abuse;

"(6) The risk to the public health;

"(7) The potential of the substance to produce psychic or physiological dependence liability;

"(8) Whether the substance is an immediate precursor.

"* * *

"(F) The board may add or transfer a compound, mixture, preparation, or substance to schedule IV when it appears that it has a low potential for abuse relative to substances included in schedule III, and that it has a currently accepted medical use in treatment in this state, and that its abuse may lead to limited physical or psychological dependence relative to the substances included in schedule III.

"* * *

"(H) Even though a compound, mixture, preparation, or substance does not otherwise meet the criteria in this section for adding or transferring it to a schedule, the board may nevertheless add or transfer it to a schedule as an immediate precursor when all of the following apply:

"(1) It is the principal compound used, or produced primarily for use, in the manufacture of a controlled substance;

"(2) It is an immediate chemical intermediary used or likely to be used in the manufacture of such a controlled substance;

"(3) Its control is necessary to prevent, curtail, or limit the manufacture of the scheduled compound, mixture, preparation, or substance of which it is the immediate precursor."

Appellant's first assignment of error asserts the above statutory scheme which authorizes the State Board of Pharmacy to add, reschedule and delete amendments to the schedules constitutes an unconstitutional delegation of legislative power in that it permits the board to, in effect, legislate a crime and determine criminal penalties.

This court considered and rejected an identical constitutional attack in 1981 in *State* v. *Davis* (Aug. 21, 1981), Scioto App. No. 1289, unreported. Inasmuch as an unreported opinion is, under Rule 2(G)(2) of the Supreme Court Rules for Reporting of Opinions, effective March 1, 1983, persuasive authority only and not controlling authority, we will reexamine our holding in the *Davis* decision.

In *Belden* v. *Union Central Life Ins. Co.* (1944), 143 Ohio St. 329, 342 [28 O.O. 295], the following is stated:

"Section 1, Article II of the state Constitution provides in part:

" 'The legislative power of the state shall be vested in a general assembly * * *.'

"It is firmly established that the General Assembly cannot delegate its legislative power and that any attempt so to do is unconstitutional. See *Cincinnati, W. & Z. Rd. Co.* v. *Commrs. of Clinton County,* 1 Ohio St., 77; *State, ex rel. Allison,* v. *Garver,* 66 Ohio St., 555, 64 N.E., 573; *State, ex rel. Godfrey,* v. *O'Brien, Treas.,* 95 Ohio St., 166, 155 N.E., 25.

"On the other hand legislative acts granting to a board or an administrative agency *quasi*-legislative or *quasi*-judicial power, have been uniformly sustained *where the General Assembly has laid down the policy* and established the standards while leaving to an administrative agency *the making of subordinate rules within prescribed limits and the determination of facts to which the legislative policy is to apply.* See *Village of Fairview* v. *Giffee,* 73 Ohio St., 183, 76 N.E., 865; *Miami County* v. *City of Dayton,* 92 Ohio St., 215, 110 N.E., 726; *Fassig* v. *State, ex rel. Turner, Atty. Genl.,* 95 Ohio St., 232, 116 N.E., 104; *Green* v. *State Civil Service Commission,* 90 Ohio St., 252, 107 N.E., 531." (Emphasis added.)

Similarly, in *State* v. *Switzer* (1970), 22 Ohio St. 2d 47 [51 O.O.2d 69],

wherein a statute granting authority to the Chief of the Division of Wildlife to vary by regulation the length of fish which may be possessed different from that in the statute was held not to be an invalid delegation of legislative power, the court stated, at 49-50, the following:

"It is fundamental that a legislative body may delegate authority to an administrative agency to promulgate rules and regulations and to ascertain facts upon which provisions of the law may operate so long as sufficient standards are set up in the statute authorizing the delegation.

"Whether a grant of authority by a legislative body to an administrative agency constitutes an unlawful delegation depends in large part upon the adequacy of standards outlined by the legislative body in its grant of authority."

Additionally, in Switzer, supra, at 52, with respect to an argument that administrative authority to adopt regulations as to length of fish that could be possessed placed in administrative agencies the power to change criminal statutes, the court stated the following:

"In State v. Messenger, 63 Ohio St. 398, the question of unlawful delegation of legislative authority was presented to this court in connection with a statute which made it unlawful to transport over certain roads 'a burden of more than two thousand pounds' in any vehicle having a tire of less than three inches in width. The statute empowered county commissioners by regulation to prescribe different weight limits for vehicles having a tire width of three inches or upwards and made it a misdemeanor for anyone to violate either the act or regulation adopted thereunder.

"In the court's opinion, at page 401, Judge Minshall reasoned:

" '* * * It will thus be observed that the commissioners do not prohibit any one from transporting a greater weight than is fixed by them in any case, nor do they fix a penalty for so doing. This is done by the statute. It is the statute that prohibits the transporting of a greater weight than is fixed by them, and it is the statute that imposes the penalty on any one for so doing. The commissioners in the exercise of an administrative function conferred on them by the Legislature, simply determine the increased weight that may be transported in vehicles having a tire of three inches or upwards. When this has been done by them, the law prohibits the carrying of burdens in excess of the weight so fixed, and adds a penalty for its violation. The regulations of the commissioners without the provisions of the law would be of no effect whatever. Nothing, in law, would be prohibited, and no penalty would be incurred by anyone in disregarding the regulations of the commissioners. It seems then clear that the commissioners of the county, in acting under this statute, do not act in a legislative capacity. The penalty that is imposed for the violation of a law is a part of its very essence. Take away the penalty, or the sanction of the law, and it is no law. * * * The commissioners only determine the facts on which the law is to operate; and as said by Agnew, J., in Locke's Appeal, 72 Penn. St. 491: "The Legislature cannot delegate its power to make a law; but it can make a law to delegate power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." Gordon v. State, 46 Ohio St., 607; Railroad Co. v. Commissioners, 1 Id., 77.' "

Applying the above authorities to the case sub judice, we are not persuaded the General Assembly has unconstitutionally delegated its legislative authority. An examination of R.C. 3719.44, as set forth earlier herein, reflects that under Subdivision (B) eight general enumerated criteria are to be considered. Subdivision (F) then provides expressly that additions to

Schedule IV are permitted only when it appears that the scheduled drug "has a low potential for abuse relative to substances included in schedule III, and that it has a currently accepted medical use in treatment in this state, and that its abuse may lead to limited physical or psychological dependence relative to the substances included in schedule III."

Determination of the existence of the R.C. 3719.44(F) criteria as a condition to the schedule of a drug in Schedule IV is mandatory. See *Sterling Drug* v. *Wickham* (1980), 63 Ohio St. 2d 16 [17 O.O.3d 10].

In *Burger Brewing Co.* v. *Thomas* (1975), 42 Ohio St. 2d 377, the Supreme Court at 384-385 stated, with respect to standards in statutory delegation of authority to an agency, the following:

"With respect to standards in legislation under the police power, an exception to the requirement of specific standards is recognized where it is impossible or impractical to provide specific standards, and to do so would defeat the Legislature's object sought to be accomplished. *Weber* v. *Board of Health* (1947), 148 Ohio St. 389; *Pompei Winery* v. *Board of Liquor Control, supra* (167 Ohio St. 61)."

Giving consideration to the evils to be remedied by the drug control legislation here considered, this effectively requires ongoing adjustments with the marketing of new drugs and the increased knowledge of the nature of existing drugs with a recognition that the General Assembly is not in continuous session, we hold the legislative standards constitutionally adequate in order that the will of the General Assembly, not the State Board of Pharmacy, be implemented.

In the same view, it is the General Assembly, not the State Board of Pharmacy, which is exercising its power to define criminal offenses and varying penalties dependent upon which schedule the drug has been administratively

placed. In sum, the State Board of Pharmacy determines only facts pursuant to legislative direction.

While this question has apparently not been passed upon by the Ohio Supreme Court, the Court of Appeals for Delaware County in *State* v. *George* (June 30, 1982), No. 81-CA-29, unreported, is in accord with our conclusions. Outside of Ohio, similar holdings were reached in *Ex Parte McCurley* (Ala. 1980), 390 So. 2d 25; *State* v. *Brown* (Okla. Crim. App. 1978), 576 P. 2d 776; *State* v. *Edwards* (Tenn. 1978), 572 S.W. 2d 917; *State* v. *King* (Minn. 1977), 257 N.W. 2d 693; *People* v. *Avery* (1977), 57 Ill. 2d 182, 367 N.E. 2d 79.

While admittedly, there are authorities contrary to our holding herein, we deem it sufficient to adopt the statement of the Alabama Supreme Court in *Ex Parte McCurley, supra,* at 29, wherein the court stated:

"We are not unmindful of the decisions of other jurisdictions to the contrary, *i.e., Howell* v. *State,* Miss., 300 So. 2d 774 (1974); *State* v. *Gallion,* Utah, 572 P. 2d 683 (1977); *Sundberg* v. *State,* 234 Ga. 482, 216 S.E. 2d 332 (1975); *State* v. *Rodriguez,* La., 379 So. 2d 1084 (1980), and *State* v. *Johnson,* S.D., 173 N.W. 2d 894 (1970). But we must point out that some of those decisions either contained dissenting opinions concurring in the principles we have followed, are distinguishable on the wording of the pertinent statutes, or contain statutory interpretations different from our own. Additionally, there are cases from other jurisdictions in accord with our views, e.g., *State* v. *Lisk,* 21 N.C. App. 474, *cert. den.* 285 N.C. 666 (1974); see also 28 C.J.S. Supp. *Drugs & Narcotics,* § 100 (1974). Therefore, we hold that § 20-2-20 does not contain an impermissible delegation of legislative power to the Board of Health."

The first assignment of error is overruled.

Under the second assignment of er-

ror it is asserted that constitutional due process requirements of fair notice of proscribed conduct is violated for the reason it does not appear in R.C. 3719.44 that diazepam is a controlled substance under Schedule IV and that ascertainment of such schedule is not reasonably accessible. While we agree that under *Lanzetta* v. *New Jersey* (1939), 306 U.S. 451, fair notice of criminal proscription is required, we disagree that such notice did not exist in the case *sub judice*. Both R.C. 3719.43 and 3719.44 give notice that additional drugs may be administratively scheduled under the various classifications as was done under R.C. 3719.44(F) with diazepam.

R.C. 119.03 *et seq.* which must be followed by the Board of Pharmacy in amending a schedule requires public notice and public hearing and a delay in setting an effective date until certain filing requirements under R.C. 119.04 are met. Further, since the enactment of Sub. H.B. No. 25, effective November 4, 1977 (137 Ohio Laws 1749), the adopted rule is required by R.C. 111.15 to be filed with the Ohio Secretary of State and each rule is a public record open to public inspection. R.C. 103.05 provides for publication in the Ohio Administrative Code. Diazepam appears in Ohio Adm. Code 4729-11-04(A)(4) as a Schedule IV drug.

Although drugs scheduled by the State Board of Pharmacy do not appear in the statutes, a reasonable person reading the relevant statutes would be aware that he would also have to ascertain the regulations adopted by the State Board of Pharmacy. We deem the notice requirement in adopting a rule of schedule amendments, coupled with the public record requirements, are sufficient to satisfy the due process notice requirements of the state and federal Constitutions. A like conclusion has been reached in *Montoya* v. *O'Toole* (1980), 94 N.M. 303, 610 P. 2d 190; *State* v. *Ed-*

*wards, supra.* Cf. *People* v. *Avery, supra.*

The second assignment of error is overruled.

Appellant's third assignment of error argues that the trial court erred in instructing the jury as a matter of law that diazepam was a Schedule IV controlled substance. Appellant first contends that such instructions to the jury were erroneous based upon the arguments set forth in the first and second assignments of error. Appellant secondly contends that the court in instructing the jury that diazepam was a Schedule IV substance, in effect, took such material issue of fact from the jury's determination. In that we have previously overruled appellant's first and second assignments of error, we consider only the second argument propounded by appellant herein.

The determination of whether a substance is a controlled substance under R.C. 3719.41 and Ohio Adm. Code 4729-11-04 is one of law to be decided by the court. *State* v. *Hobbs* (1980), 101 Idaho 262, 611 P. 2d 1047; *State* v. *Harris* (Mo. App. 1978), 564 S.W. 2d 561; *Skaggs* v. *State* (1973), 260 Ind. 180, 293 N.E. 2d 781. Additionally, the trial court may take judicial notice that valium is a Schedule IV drug. *State* v. *Hobbs, supra;* *United States* v. *Berrojo* (C.A. 5, 1980), 628 F. 2d 368; *Gilbert* v. *State* (Ala. Crim. App. 1981), 401 So. 2d 342.

Under Crim. R. 27 the judicial notice and determination of foreign laws provisions of Civ. R. 44.1 apply in criminal cases. Under Civ. R. 44.1(A)(2), "[t]he court in taking judicial notice of * * * an administrative regulation within this state may inform itself in such manner as it deems proper * * *. The court's determination shall be treated as a ruling on a question of law and shall be made by the court and not the jury." See, also, Giannelli, Ohio Evidence Manual (1982) 33, Author's Comments, Section 201.03, Article II. Accordingly,

we conclude that the trial court did not err in instructing the jury that diazepam was a Schedule IV substance. Appellant's third assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

ABELE, P.J., and GREY, J., concur.