Certiorari was granted to consider the constitutionality of the Alabama Uniform Controlled Substances Act, Code of 1975, §§20-2-1 et seq.[1] Specifically, the petitioner contends that the Act must fall for either of two reasons: (1) It is an unconstitutional delegation of legislative authority, and (2) in its application to the petitioner it failed to accord with the notice requirements of due process of law.
The particular provisions questioned by the petitioner are contained in § 20-2-20:
 (a) The state board of health, unless otherwise specified, shall administer this chapter and may add substances to or delete or reschedule all substances enumerated in the schedules in sections 20-2-23, 20-2-25, 20-2-27, 20-2-29 or 20-2-31 pursuant to the procedures of the state board of health. In making a determination regarding a substance, the state board of health shall consider the following:
 (1) The actual or relative potential for abuse; (2) The scientific evidence of its pharmacological effect, if known;
 (3) The state of current scientific knowledge regarding the substance;
(4) The history and current pattern of abuse;
 (5) The scope, duration and significance of abuse;
(6) The risk to the public health;
 (7) The potential of the substance to produce psychic or physiological dependence liability; and
 (8) Whether the substance is an immediate precursor of a substance already controlled under this chapter. *Page 27 
 (b) After considering the factors enumerated in subsection (a) of this section, the state board of health shall make findings with respect thereto and issue a rule controlling the substance if it finds the substance has a potential for abuse. [Emphasis added.]
. . . . .
 (d) If any substance is designated, rescheduled or deleted as a controlled substance under federal law and notice thereof is given to the state board of health, the state board of health shall similarly control the substance under this chapter after the expiration of 30 days from publication in the federal register of a final order designating a substance as a controlled substance or rescheduling or deleting a substance, unless within that 30-day period, the state board of health objects to inclusion, rescheduling or deletion. In that case, the state board of health shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the state board of health shall publish its decision, which shall be final unless altered by statute. Upon publication of objection to inclusion, rescheduling or deletion under this chapter by the state board of health, control under this chapter is stayed until the state board of health publishes its decision.
We agree with the Court of Criminal Appeals in its assessment of the constitutional validity of §§ (a) and (b), finding that these statutory terms do not constitute an unconstitutional delegation of legislative power.
Article IV, Section 43 of the Alabama Constitution of 1901 provides:
 In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.
Article IV, Section 44, of the Alabama Constitution of 1901 states that:
 The legislative power of this state shall be vested in a legislature, which shall consist of a senate and a house of representatives.
The application of these provisions to other instrumentalities has been the subject of litigation in other cases. One of these was State v. Vaughan, 30 Ala. App. 201, 4 So.2d 5; cert. den.241 Ala. 628, 4 So.2d 9 (1941), concerning a regulation promulgated by the Commissioner of Conservation under the authority of the legislation creating the State Conservation Department. That legislation had authorized the Commissioner to "make reasonable rules and regulations . . . for the best interest of the conservation, protection and propagation of . . . fish . . . which rules and regulations shall have the force and effect of law. . . ." Under that statutory authority the Commissioner published the following rule:
 The sale, offer or possession for sale of any game fish in the State of Alabama, regardless of where taken is hereby prohibited.
This Court held that this rule went beyond the power of the Commissioner and constituted an unlawful exercise of legislative power. In reaching that decision this Court recognized the absence of any "universal formula for determining in all cases the power which must be exercised by the legislative body itself, each case" being "controlled by the application of the general principle to a given situation."Ibid. at 30 Ala. App. 204, 4 So.2d 5. It should be noted at this point that in Vaughan the Commissioner's "rule" was his own unilateral prohibition. As will be shown, that circumstance is different from the situation here, for under this statute the legislature itself has asserted the complained — about proscription.
Whether or not a nondelegable legislative power to constitute criminal conduct has been granted to the State Board of Health *Page 28 
by § 20-2-20 has not heretofore been considered by this Court, but the issue was before the Court of Criminal Appeals inCassell v. State, 55 Ala. App. 502, 317 So.2d 348 (1975). It was contended in that case, as in this, that the defendant had been indicted for an offense promulgated by a Board of Health regulation (by having placed methaqualone on the controlled list) and not by a legislative act as required by Sections 42 and 43 of the Constitution. In upholding the Act under this attack that Court reviewed a number of decisions recognizing the doctrine of legislative delegation of power, and quoted from State v. McCarty, 5 Ala. App. 212, 59 So. 543 (1912):
 The validity of such statutes, says the Supreme Court of Massachusetts, has been long recognized, and may be upheld upon one or both of two grounds: "They may be considered as being within the principle of local self-government as to such matters; the board of health being treated as properly representing the inhabitants in making regulations, which often are needed at short notice, and which could not well be made, in all kinds of cases, by the voters in town meeting assembled. Perhaps some of these statutes may also be justified constitutionally, on the ground that the work of the board of health is only a determination of details in the nature of administration which may be by a board appointed for that purpose; and that the substantive legislation is that part of the statute which prescribes a penalty
for the disobedience of the rules which they make as agents performing executive and administrative duties."
The McCarty case involved a legislative act creating a State Live Stock Sanitary Board which was authorized to make rules governing, inter alia, the disposition of livestock which might be quarantined. It required livestock owners to obey those rules pertaining to cleaning and disinfecting infected livestock and quarantined places. The Act continued by providing punishment to one for "failing or refusing, without just cause and legal excuse, to cleanse and disinfect any infested or infected place in which live stock are kept, when requested or directed by the . . . Board. . . ." In commenting upon the power of the legislature as manifested in that Act, the Court stated, at 5 Ala. App. 217-18, 59 So. 543:
 [T]he state has, through unquestionable constitutional channels, provided a system dealing with the preservation of the health of live stock and their protection from contagious diseases. . . . Realizing that conditions would naturally and in all probability arise which could not then be foreseen, and that the administration of the law was one coming peculiarly within the province of scientific experts, the Legislature, out of necessity, wisely left to the members of the board the making of such rules as would promote the efficient administration of the law; and itself provided, in section 7083 [the punitive section], a spur for the observance of the law. . . .
This paragraph was concluded with this pertinent sentence:
 If the appellee is guilty in this case, and is punished under this affidavit, he will be punished by the will and by the command of the Legislature of Alabama, and not by the will or command of the Live Stock Sanitary Board, or any of its members, or of any other authority.
Commenting upon the delegation issue, the Court added:
 While a legislative body cannot delegate its legislative power to make a law, it may delegate the power to an arm of the government to make and enforce regulations for the execution of a statute according to its terms. [Citations omitted.]
 "The true distinction," said Judge Ranney for the Supreme Court of Ohio, in Cincinnati, Wilmington Zanesville R.R. Co. v. Commissioners, 1 Ohio St. 77, 88, in a declaration which, according to Sanborn, Circuit Judge, in St. L. Mer. Bridge Ter. R.R. Co. v. U.S., supra, has been repeatedly upheld by the Supreme Court of the United States, "is between a delegation of power to make the law, which necessarily involves a discretion as to *Page 29 
what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter no valid objection can be made."
These principles are applicable in the case before us, and in their application we must be guided by the presumption of constitutionality accorded to legislative acts and our duty to sustain them unless we are convinced beyond reasonable doubt of their unconstitutionality. Riley v. Bradley, 252 Ala. 282,41 So.2d 641 (1949); Taylor v. Hudson, 265 Ala. 541, 93 So.2d 143
(1957). Consonant with that duty, a statute which is susceptible to two interpretations, one of which would be constitutional, will be given the constitutional interpretation. Piggly-Wiggly of Jacksonville, Inc. v. City ofJacksonville, Ala., 336 So.2d 1078 (1976); Sanders v. State,42 Ala. App. 67, 152 So.2d 439 (1963); Ala. State Federation ofLabor v. McAdory, 246 Ala. 1, 18 So.2d 810 (1944).
The petitioner maintains that § 20-2-20 unlawfully delegates to the Board of Health the legislative authority to establish a criminal offense because that section authorizes the Board to add, delete or reschedule substances, either through its own action or by adoption under federal law. We respectfully disagree with that interpretation. As this Court recognized inBoswell v. State, 290 Ala. 349, 276 So.2d 592 (1973), the Act is divided into five parts: Definitions; Standards and Schedules; Regulation of Manufacture, Distribution and Dispensing of Controlled Substances; Offenses and Penalties; and Enforcement and Administrative Provisions. With the exception of that part on definitions, all of these would fall under the general category of "administration" or execution of the Act. It is significant that a separate article (Article 4) pertains to offenses and penalties. In other words, following the placing of a substance in a controlled schedule, the legislature itself has stated that to possess, sell, furnish, give away, obtain, etc., such conduct will constitute an offense. The Board determines that the substance should be controlled. Thus it performs its administrative function. But it is the legislative will, not the Board's, which states that, following a controlled classification, certain conduct related to that controlled substance constitutes a public offense. The punishment under the Act does not ensue from the mere scheduling, but ensues from the affirmative legislative mandate declaring certain conduct related to that substance a crime. Thus there is no unlawful delegation of legislative power to the Board, even though the section of the Act on offenses may not come into play until the Board has made an administrative decision to schedule a substance. This interpretation of the Act is consistent with the power of the legislature to determine the criminal laws, Woco Pep Co. of Montgomery v. Cityof Montgomery, 213 Ala. 452, 105 So.2d 214 (1925), and with our duty to adopt that interpretation which accords constitutionality to the legislative will, McAdory, supra.
We are not unmindful of the decisions of other jurisdictions to the contrary, i.e., Howell v. State, Miss., 300 So.2d 774
(1974); State v. Gallion, Utah, 572 P.2d 683 (1977); Sundbergv. State, 234 Ga. 482, 216 S.E.2d 332 (1975); State v.Rodriguez, La., 379 So.2d 1084 (1980), and State v. Johnson, S.D., 173 N.W.2d 894 (1970). But we must point out that some of those decisions either contained dissenting opinions concurring in the principles we have followed, are distinguishable on the wording of the pertinent statutes, or contain statutory interpretations different from our own. Additionally, there are cases from other jurisdictions in accord with our views, e.g.,State v. Lisk, 21 N.C. App. 474, cert. den. 285 N.C. 666 (1974); see also 28 C.J.S.Supp. Drugs Narcotics § 100 (1974). Therefore, we hold that § 20-2-20 does not contain an impermissible delegation of legislative power to the Board of Health.
The petitioner's second attack concerns the process by which the substances in question were placed in the controlled classification.
The petitioner was found guilty of possessing (1) codeine, (2) pentazocine [Talwin], (3) chlorazepate, and (4) d-amphetamine *Page 30 
sulphate. It appears that (1) and (4) were included in the then current Controlled Substances Inventory List of the U.S. Department of Justice under P.L. 91-513 as Schedule II drugs at the time the Alabama Act was adopted. Chlorazepate was controlled under federal law. The State Board, on February 19, 1975, voted to have state control of chlorazepate coincide with federal control, which became effective on July 2, 1975. Under § 20-2-20 (d) the Board found no objection to the classification, hence at the end of 30 days from notice to the Board of that classification that substance became controlled. The petitioner contends that this control procedure violated the requirements of due process of law in two aspects: (1) it failed to follow the procedure outline in paragraph (a), and (2) it furnished inadequate notice to affected parties, was based upon an inadequate record, and was based upon no objective standard for weighing evidence before the Board.
A reading of the statute reveals that the classification procedures under (a) and (b) refer to different scheduling requirements. Paragraph (a) deals with the Board's classification of a substance upon its own initiative. In performing that function the Board is required to consider eight specified aspects, and thereafter under paragraph (b) to "make findings . . . and issue a rule controlling the substance if it finds the substance has a potential for abuse."
Paragraph (d), however, entails an entirely different procedure, unrelated to the several aspects specified in paragraph (a). Under (d) the Board may rely upon a final control order published in the federal register, and 30 days from such publication may itself order control. Paragraph (d) allows for an objection to the control of such a substance and a public hearing following the Board's published objections. In its salient features, paragraph (d) adopts the procedures utilized by the federal government in determining a control status, a procedure significantly similar to that accomplished under our own law. 21 U.S.C.A. §§ 802, 811, 812. We may take judicial knowledge of the fact that the Federal Register contains published accounts of preliminary and final control rulings of the Food and Drug Administration of the United States Department of Health, Education and Welfare,[1] that these rules either call for or reflect public hearings, and that they include scientific findings on the qualities and propensities of drugs which are made the basis of recommendations from the Secretary of HEW to the Attorney General of the United States who has the statutory authority to add to or delete a drug from the federal schedule. McElroy, Alabama Evidence § 480.01 (4);21 U.S.C.A. § 811. In short, the federal decision to classify a drug as a controlled substance itself is subject to codified objective standards, and published findings and rules. As we stated, paragraph (d) simply enables the Alabama board to adopt those procedures rather than having to duplicate them. Under that paragraph, moreover, the Board was not required to make an express finding supporting its order. Cf. Alabama PublicService Commission v. Nunis, 252 Ala. 30, 39 So.2d 409 (1949). Under those circumstances we do not believe that a failure of due process has been shown. Railroad Commission v. A.G.S.R.Co., 185 Ala. 354, 64 So. 13 (1913).
The drug pentazocine [Talwin] was controlled by action of the Board itself on August 15, 1973, as the following minutes of the Board of Health establish:
 Dr. Hamrick informed the Board that it had been brought to his attention by the State Board of Medical Examiners that the State Health Department had received its first death certificate for Talwin intoxication which had been documented by an autopsy and it was suggested that Talwin be placed in Schedule III Non-Narcotic. During discussion it was suggested Valium, Librum and some other items be included also. Several questions were raised about these being included and request was made that these last items be deleted from consideration at this time. Dr. Hamrick moved that *Page 31 
the SCPH recommend that Talwin be placed in Schedule III Non-Narcotic; Dr. Strandell seconded the motion, which was carried unanimously.
These minutes, it was conceded by the State Health Officer, constituted the "best" and "legal" record of that meeting.
It is clear from these minutes that the procedures outlined by the legislature in § 20-2-20 (a) and (b) were not followed by the Board when it classified Talwin as a controlled substance. The statutory language of subsection (a) is peremptory: ". . . the state board of health shall consider. . . ." The language of subsection (b) likewise is directory: "After considering the factors enumerated in subsection (a) of this section, the state board of health shall make findings with respect thereto. . . ." Obviously the legislature considered it necessary for the Board to do more than issue a ruling, for it specified the considerations to be entertained and then directed findings to be made "with respect thereto," that is, with respect to those considerations. Accordingly, we disagree with the Court of Criminal Appeals in its finding that the State Board of Health complied with its statutory duty in classifying the drugs for which the appellant was found guilty. The classification of pentazocine, having been legally deficient, could not constitute the basis for the charge under count two of the indictment, and thus the petitioner could not have been found guilty under that count. Having reached this conclusion, it is unnecessary to consider the other objections to the Board's classification of Talwin. Therefore, petitioner's conviction under count two is reversed and this cause is remanded to the Court of Criminal Appeals for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES and EMBRY, JJ., concur.
BLOODWORTH and FAULKNER, JJ., not sitting.
[1] The facts of this case are found in McCurley v. State, Ala.Crim.App., 390 So.2d 15 [1980].
[1] Now known as Department of Health and Human Services.