The defendant was indicted and convicted for the unlawful possession of 125 tablets containing pentazocine (Talwin) in violation of the Alabama Uniform Controlled Substances Act. Alabama Code 1975, Sections 20-2-1 et seq. After waiving his right to a jury trial, the defendant was tried in circuit court where the facts of the case were stipulated by counsel. Sentence was two years' imprisonment.
Three issues are presented on appeal.
 I
Initially, the defendant contends that at the time of his arrest Talwin had not been legally classified as a controlled substance in this state. It was stipulated that on November 7, 1979, the defendant was arrested in Jefferson County. In his possession were 125 tablets containing pentazocine (Talwin).
 A
The defendant argues that Talwin is not controlled because the Board of Health failed to comply with Alabama Code 1975, Sections 20-2-20 (a) and (b) in placing this drug on the list of controlled substances.
Talwin was designated a controlled substance by the Federal Government on January 10, 1979. Volume 44, Federal Register, *Page 785 
No. 7, page 2169. Consequently and under the facts of this case, Sections 20-2-20 (a) and (b) do not govern.
Section 20-2-20 (d)[1] provides that substances controlled under Federal law will automatically be controlled under Alabama law, unless the Board of Health objects. In commenting on subsection (d), our Supreme Court has stated:
 "A reading of the statute (Section 20-2-20) reveals that the classification procedures under (a) and (b) refer to different scheduling requirements. Paragraph (a) deals with the Board's classification of a substance upon its own initiative. In performing that function the Board is required to consider eight specified aspects, and thereafter under paragraph (b) to `make findings . . . and issue a rule controlling the substance if it finds the substance has a potential for abuse.'
 "Paragraph (d), however, entails an entirely different procedure, unrelated to the several aspects specified in paragraph (a). Under (d) the Board may rely upon a final control order published in the federal register, and 30 days from such publication may itself order control. Paragraph (d) allows for an objection to the control of such a substance and a public hearing following the Board's published objections. In its salient features, paragraph (d) adopts the procedures utilized by the federal government in determining a control status, a procedure significantly similar to that accomplished under our own law. 21 U.S.C.A. Sections 802, 811, 812."
McCurley v. State, 390 So.2d 25, 30 (Ala. 1980).
The undisputed evidence in this case is that the Board of Health made no objection to the federal designation of Talwintablets as a Schedule IV controlled substance. As a result, thirty days from publication in the Federal Register of the final order designating Talwin tablets as a Schedule IV substance, Talwin tablets became a Schedule IV controlled substance in Alabama.
 B
The defendant argues that the State Board of Health rejected the federal decision to classify Talwin as a controlled substance and retained its own earlier classification of Talwin.
From the exhibits admitted into evidence in this case, it appears that the State Board of Health classified Talwin as a controlled substance on August 15, 1973. However, in McCurleyv. State, 390 So.2d 15 (Ala.Cr.App.), affirmed in part, reversed in part, 390 So.2d 25 (Ala. 1980), our Supreme Court found that this classification was "legally deficient" because the Board of Health had not followed the procedures outlined by the legislature in Sections 20-2-20 (a) and (b).
Under the State Board of Health's own regulations, injectable pentazocine or Talwin was classified as a Schedule III controlled substance, while oral pentazocine was listed as a Schedule IV substance. The Federal Register classifies all pentazocine as a Schedule IV substance.
An extract from the minutes of the February 21, 1979, meeting of the Board of Health reflects:
 "A notice from the Federal Register, Vol. 44, No. 7, Wednesday, January 10, 1979, places Pentazocine into Schedule IV of the Federal Schedule, effective February *Page 786 
9, 1979. The Subcommittee moved that the placement of Talwin Tablets and Compound in Schedule IV coincides with action previously taken in Alabama by the State Committee of Public Health, but that injectible Pentazocine would remain in Schedule III and would be unchanged from its position as earlier placed in Alabama by the State Committee of Public Health. The motion carried unanimously."
Under the principles stated in McCurley, the evidence in this case does not show that the State Board of Health has complied with its statutory duty in classifying injectable pentazocine
as a Schedule III controlled substance. There is no evidence that the Board "publish(ed) the reasons for objection (to the federal classification) and afford(ed) all interested parties an opportunity to be heard." Section 20-2-20 (d). However this case involves Talwin tablets, not injectable Talwin. The evidence does reflect that there was no objection made by the State Board to the Federal classification of Talwin tablets as a Schedule IV controlled substance. In fact, the Board had previously classified Talwin tablets as a Schedule IV substance although this attempted classification was "legally deficient".McCurley. Since no objection to the Federal classification of oral Talwin was filed, oral Talwin became a Schedule IV controlled substance in Alabama as a matter of law on February 10, 1979.
 II
The defendant argues that his constitutional right of due process is violated by the provisions of Alabama Code 1975, Section 20-2-20 (d).
Procedural due process requires that citizens be given fair notice of conduct forbidden by a penal statute. A strong argument can be made that Section 20-2-20 (d) violates procedural due process insofar as it authorizes the designation or rescheduling of drugs as controlled substances by the Board's mere failure to object within thirty days from final publication in the Federal Register, State v. Dougall,87 Wn.2d 118, 570 P.2d 135 (1977). However, this Court is bound by the decisions of the Supreme Court of Alabama.
In McCurley, one of the contentions was that the procedure outlined under Section 20-2-20 (d) violated the requirements of due process of law because it "furnished inadequate notice to affected parties." McCurley, 390 So.2d at 30. In addressing this and another due process objection to Section 20-2-20 (d), the Supreme Court of Alabama held:
 "We may take judicial knowledge of the fact that the Federal Register contains published accounts of preliminary and final control rulings of the Food and Drug Administration of the United States Department of Health, Education and Welfare, that these rules either call for or reflect public hearings, and that they include scientific findings on the qualities and propensities of drugs which are made the basis of recommendations from the Secretary of HEW to the Attorney General of the United States who has the statutory authority to add to or delete a drug from the federal schedule. McElroy, Alabama Evidence, Section 480.01 (4); 21 U.S.C.A. Section 811. In short, the federal decision to classify a drug as a controlled substance itself is subject to codified objective standards, and publish findings and rules. As we stated, paragraph (d) simply enables the Alabama board to adopt those procedures rather than having to duplicate them. Under that paragraph, moreover, the Board was not required to make an express finding supporting its order. Cf. Alabama Public Service Commission v. Nunis, 252 Ala. 30, 39 So.2d 409 (1949). Under those circumstances we do not believe that a failure of due process has been shown. Railroad Commission v. A.G.S.R. Co., 185 Ala. 354, 64 So. 13 (1913)."
McCurley, 390 So.2d at 30.
Under the authority of McCurley, this Court must uphold the constitutionality of Section 20-2-20 (d) against the attacks made by the defendant. *Page 787 
 III
The courts of this state have consistently held that the provisions of the Alabama Uniform Controlled Substances Act authorizing the State Board of Health to place certain drugs on the list of controlled substances do not constitute an unconstitutional delegation of legislative authority. McCurley, 390 So.2d at 27.
We have searched the record for error as required by law. The judgment of the Circuit Court is without error and is hereby affirmed.
AFFIRMED.
All Judges concur.
[1] "(d) If any substance is designated, rescheduled or deleted as a controlled substance under federal law and notice thereof is given to the state board of health, the state board of health shall similarly control the substance under this chapter after the expiration of 30 days from publication in the federal register of a final order designating a substance as a controlled substance or rescheduling or deleting a substance, unless within that 30-day period, the state board of health objects to inclusion, rescheduling or deletion. In that case, the state board of health shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the state board of health shall publish its decision, which shall be final unless altered by statute. Upon publication of objection to inclusion, rescheduling or deletion under this chapter by the state board of health, control under this chapter is stayed until the state board of health publishes its decision."