[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 133 
Appellant was convicted of the offense of possessing marijuana and the jury assessed a fine against him in the amount of $7,500.00. As additional punishment the trial court sentenced him to fifteen years imprisonment in the penitentiary. Appellant was represented by counsel of his choice and at arraignment he waived reading the indictment and pleaded not guilty.
Appellant did not testify in his behalf but rested after his cross-examination of the State's witnesses and his motion to exclude the State's evidence for failure to make out a prima facie case. He filed a motion for a new trial raising the sufficiency of the evidence and claimed the trial court erred in refusing several written charges.
On January 28, 1978, Officer Sammie Brown, Jr., of the Mobile Police Department went before one of the District Court judges and made an affidavit in support of a search warrant to search the residence of appellant located at 3628 Minmarsue Drive in Prichard, Alabama. The affidavit reads as follows:
 "SEARCH AFFIDAVIT ________________________________________
District Court of Alabama, Mobile County
 Affidavit: State of Alabama, County of Mobile: Before the undersigned personally appeared Officer Sammie Brown, Jr. who requested a search warrant and in support thereof made oath as follows:
 "1 The ()PERSON (X)PLACE to be searched is in Mobile County and is described as:
 3628 Minmarsue, Prichard, Alabama, residence of two black males named Freddie Earl Reed and Freddie White
 "2. The PROPERTY to be searched for and seized, if found, is specifically described as:
Marijuana
"3. The GROUNDS for search are that said property
() was stolen or embezzled.
(X) was a means of committing the felony of:
Possession of Marijuana
() will be used to commit the offense of:
 "4. The FACTS establishing probable cause for search are:
 "I am Officer Sammie Brown, Jr. of the Mobile Police Department, Mobile, Alabama. I am presently assigned to the Narcotics Section. On Friday, January 27, 1978, I received the following information from a reliable informant who has given me reliable information within the past six months. This information has led to the arrest and conviction of two drug violators in two cases in the District Court of Mobile, Alabama. The informant stated that within the past twenty-four hours, he was inside the residence of two black males named Freddie Earl Reed and Freddie White. While in the residence at that time, the informant observed Freddie Earl Reed and Freddie White, cutting up green plant material and putting it into small plastic sandwich bags. The informant also observed a large white plastic bag with green plant material uncut in the kitchen. This substance was represented by Freddie Earl Reed and Freddie White to be Marijuana. I know that Marijuana is commonly packaged in this manner and has this appearance. I have frequently come into contact with persons using and handling this drug in my duties as a narcotics officer.
 /s/ Sammie Brown, Jr.
Affiant
 "Subscribed and sworn to before me this 28th day of January, 1978, at 8:50 A.M.
 /s/ Paul W. Brunson
()Judge, District Court of Alabama, Mobile County ( )Municipal Judge, City of" *Page 134 
Officer Brown, along with several other officers of the Mobile Police Department, a Deputy Sheriff of Mobile County, and a police officer of Prichard, went to the address set forth in the search warrant and knocked on the door. Appellant answered the door knock and the officers told him they had a search warrant. Appellant exclaimed, "No" and slammed the door, locking it. One of the officers opened the burglar bar door and Officer Brown kicked the door open. The officers entered the house and found appellant and a small child. Appellant was in the den area of the house and was in the process of drawing the curtains in the room.
The search got under way and the officers found approximately 24.9 pounds of marijuana which was in several bags. According to the testimony of Ms. Alilee Pillman, the Toxicologist for the Mobile Police Department, whose qualifications were not questioned, "20 plastic bags of plant material and 14 one pound bags of plant material and two pounds of loose green plant material, a white paper bag with some more plant material, a brown paper bag and two bags in brown paper bags, three cigarette rollers, an ash tray containing plant material, four large garbage bags with residue, some scales, and some white powder were turned over to her by Police Officer Roderic Steade." She tested the plant material and found it to be marijuana. She also tested the white substance and found it was 0.2219 grams of phencyclidine. The testimony of Ms. Pillman was received without objection.
During the search the officers found three handguns and between seven and eight thousand dollars in currency. The money was subsequently returned to appellant.
When the officers found the white powder and brought it to the evidence officer in the den where appellant was sitting appellant spoke up and said "that he knew about the weed but he didn't know the white powder was in his house." This statement was made by appellant without any questions being asked him by the officers.
When the searching officers found the first bag of green plant material Officer Brown gave appellant the Miranda rights and warnings by reading these rights from a card he had in his possession. Brown further testified that he could not recall appellant's response to the Miranda rights but whatever his response was it was not made in a negative sense.
Appellant filed a pre-trial motion to suppress the evidence obtained during the search. The motion hearing was held on the day of the trial and was overruled and denied.
The affidavit in support of the search warrant in this case was based on hearsay information provided by and sworn to by Officer Sammie Brown, Jr., of the Mobile Police Department. In the affidavit Officer Brown swore that the informer had provided reliable information on two occasions in the past six months which led to the arrest and conviction of two drug offenders. He also stated in the affidavit that the informer came by this information as a result of a visit to appellant's residence within the past twenty-four hours.
Although an affidavit may be based on hearsay information and need not reflect the direct personal observation of the affiant, the issuing authority of the search warrant must be informed of some of the underlying circumstances from which the informant concluded that the drugs were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was credible or his information reliable. Aguilarv. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The requirements set forth in Aguilar v. Texas, supra, create a two "prong" test that must be met before an affidavit based on hearsay information can sufficiently support a search warrant.
One of the "prongs" of the "Aguilar" test requires that the issuing authority of the search warrant must be informed of the underlying circumstances from which the affiant concluded that the informant is *Page 135 
a credible person and his information is reliable. McCurley v.State, 390 So.2d 15 (Ala.Cr.App. 1980) reversed on other grounds, 390 So.2d 25 (Ala. 1980). In the case at bar Officer Brown swore that the informant was reliable and had provided reliable information to the police on two previous occasions. In fact Officer Brown stated in the affidavit that "I received the following information from a reliable informant who has given me reliable information within the past six months." This is almost identical to the statement, "I have received information from a person whose record of reliability for correctness has been good," which was found to be sufficient to support this "prong" of the "Aguilar" test by the Alabama Supreme Court in Neugent v. State, 340 So.2d 52 (Ala. 1976) cert. denied, 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361
(1977). The statement is also similar to the one approved by the Alabama Court of Criminal Appeals in McCurley v. State,390 So.2d 15 (Ala.Cr.App. 1980) reversed on other grounds,390 So.2d 25 (Ala. 1980). The trial court had ample support for its finding that Officer Brown provided sufficient information for the issuing authority of the search warrant to conclude that the informant was credible and his information reliable.
The other "prong" of the test set forth by Aguilar v. Texas, supra, is that the issuing authority of the search warrant be informed of the underlying circumstances from which the informant concluded that the items to be seized were where he claimed they were. McCurley v. State, supra. Officer Brown stated in his affidavit that the informant had knowledge that the marijuana was at the residence as a result of a visit to that residence within the past twenty-four hours. He also indicated that the packaging and cutting of the material thought to be marijuana was done in a manner and appearance common to the processing and packaging of marijuana. This provides sufficient information for the issuing authority of the search warrant to conclude that there was probable cause that the marijuana existed in the place where the informant stated it was present during his visit in appellant's home.
Appellant asserts that Officer Brown had no personal knowledge that the informant observed the marijuana in the residence while on a visit. He further asserts that the informant could have been a burglar for all Officer Brown knew. Officer Brown made a determination that the informant was credible or the information was reliable. The issuing authority of the search warrant examined the underlying circumstances supporting Officer Brown's determination that the informant was credible and the information reliable. Prior proven reliability of an informant is an indication of the present reliability of his information as well as his credibility. Consalvo v. State, Ala.Cr.App., 372 So.2d 44.
In addition to the suggestion that the informant could have been a burglar, appellant also suggests that the informant could have placed the marijuana inside the residence. Officer Brown testified at the hearing that he had no knowledge whether the informant could have been a burglar or could have placed the marijuana in the residence himself because he did not observe him enter the residence on a visit or question him as to whether he burglarized the residence or placed the marijuana there himself. No evidence was produced to indicate that this was the case, but was only speculation on the part of the defense. Appellant moved the trial court to allow the defense to examine the informer to ascertain the manner he obtained entry into the residence of appellant.
 "[W]here a defendant makes a substantial showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." (Emphasis added.) Franks v. Delaware, 438 U.S. 154, 155, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).
In the case at bar the defendant failed to make a substantial showing that a false *Page 136 
statement was knowingly and intentionally made or was made with reckless disregard for the truth. The informer who was found to be reliable and credible by Officer Brown and the issuing authority of the search warrant told Officer Brown that he observed the marijuana in the residence on a visit. Officer Brown relying on the informant's statement as the truth had no reason to question him on such matters as whether he burglarized the residence or planted the marijuana there. Again, no evidence was produced to indicate that the informant had done so.
Appellant relies on DeGruy v. State, 56 Ala. App. 521,323 So.2d 406, cert. denied 295 Ala. 399, 323 So.2d 411 (1975). In that case it was held that in a prosecution for possession of marijuana the introduction into evidence of five packets of heroin found in a search was so prejudicial and irrelevant that it required reversal. The Court of Criminal Appeals in that case found the case of Brantley v. State, 294 Ala. 344,317 So.2d 345 (1975) not to be controlling.
In the case of Brantley v. State, supra, the Alabama Supreme Court held that other controlled substances were admissible in a prosecution for possession of marijuana to show the "complete story" and to shed light on the issue of whether the defendant possessed the marijuana with an intent other than personal use.
In the case at bar appellant contends that DeGruy v. State, supra, not Brantley v. State, supra, should be controlling. We do not agree. The Court of Criminal Appeals has appliedBrantley subsequent to the decision in DeGruy v. State, supra, in cases involving a multiplicity of drugs in evidence, for the proposition that these drugs are admissible as part of the res gestae and one transaction or occurrence. Flippo v. State, Ala.Cr.App., 359 So.2d 1184. See Napier v. State, Ala.Cr.App.,338 So.2d 463 (1976); Smith v. State, Ala.Cr.App.,351 So.2d 668, cert. denied 351 So.2d 675 (Ala. 1977).
In DeGruy v. State, supra, the appellant was visiting a residence when shortly after his arrival a search took place of that residence by the police. Appellant only had possession of a small amount of marijuana. Five packages of heroin were found in the search of the residence which was not the residence of appellant. The Alabama Court of Criminal Appeals in that case held that the introduction into evidence of the heroin was so highly prejudicial and irrelevant that it required reversal of the conviction of possession of marijuana for other than personal use.
In the case at bar the house was laden with marijuana amounting to over 24 pounds. It was packaged in various shapes and sizes and was accompanied by two sets of scales and three cigarette rollers. The introduction of the testimony of the phencyclidine was admissible as part of the res gestae and part of one occurrence. Flippo v. State, Ala.Cr.App.,359 So.2d 1184.
Appellant also contends that it was error to allow testimony that three weapons and seventy-five hundred dollars ($7,500.00) in cash were found in the search. Appellant's counsel objected to the original question concerning other objects besides marijuana that were found in the search and was overruled. The basis of the objection was that "[t]hat has no bearing in this case." When at a later time Officer Brown was asked what else was found there was no objection and Officer Brown indicated in addition to the phencyclidine there were several handguns and seven or eight thousand dollars. Once a specific objection has been made to a question and the trial court is made aware of the grounds of the objection, it is not necessary to repeat that specific objection each time an additional question is propounded to elicit the same testimony. Small v. State,348 So.2d 507 (Ala. 1977); Carroll v. State, Ala.Cr.App.,370 So.2d 749, cert. denied, 370 So.2d 761 (Ala. 1979).
In this case, the guns and money like the phencyclidine were relevant to the case as part of the res gestae to show the "complete story" and these items had probative value to establish that the possession of marijuana was not for personal use only. Flippo v. State, supra. *Page 137 
As stated in Laffitte v. State, Ala.Cr.App., 370 So.2d 1108, cert. denied, 370 So.2d 1111 (Ala. 1979):
 "The rule is that `when the circumstances indicate that, according to the common probabilities of experience, the confession was not improperly induced, then no formal predicate is required.' C. Gamble, McElroy's Alabama Evidence, Section 200-02 (4)(a) (3rd ed. 1977). `A confessory statement, which is a spontaneous exclamation, is admissible without proof that it was not obtained by improper inducements.' McElroy Section 200.02 (4)(d). The statements were volunteered by the appellant and were not made in response to any interrogation. Thus the Miranda warnings were not required. Roberts v. State, 349 So.2d 89, 94, (Ala.Cr.App.), cert. denied, 349 So.2d 94 ([Ala.] 1977)." Id. at 1110.
Even if the "Miranda" warnings were not understood by appellant, the spontaneous utterance with reference to the white powder was admissible into evidence.
At the close of the State's case appellant made a motion to exclude which was denied. He now appeals from that ruling. The State through the testimony of Ms. Alilee Pillman, the State Toxicologist, identified the green leafy matter, obtained in the search of appellant's residence, as marijuana. In doing so the State made out a prima facie case without the introduction of the actual substance into evidence. Bickerstaff v. State, Ala.Cr.App., 369 So.2d 315; Hagendorfer v. State, Ala.Cr.App.,348 So.2d 1097, cert. denied, Ala., 348 So.2d 1101. Therefore, the trial court was proper in overruling appellant's motion to exclude.
The trial court refused to give jury charge number five submitted by appellant. That charge which contained multiple rules of law was substantially and fairly covered in the court's oral charge to the jury and its refusal will not cause a reversal. § 12-16-13, Code of Alabama (1975). The latter portion of charge number five deals with the definition of marijuana. As stated above it was substantially and fairly covered. The only omitted part of the requested charge was that marijuana does not include:
 "It [marijuana] does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, sale, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination."
There was no evidence presented that the material identified by the State Toxicologist as marijuana consisted of any of the material listed above in the omitted portion of charge number five. Therefore, that portion of the charge was properly refused. Blalock v. State, Ala.Cr.App., 369 So.2d 35, cert. denied, 369 So.2d 38 (Ala. 1979).
Appellant attacks the constitutionality of the statute §20-2-1, et seq. of the Code of Alabama (1975) under the Ninth Amendment to the United States Constitution, under Article 4, § 45 of the State of Alabama Constitution of 1901, and that the statute is an unconstitutional delegation of legislative authority.
Appellant first argues that § 20-2-1, et seq. of the Code ofAlabama (1975), which prohibits the possession of marijuana, offends the Ninth Amendment to the United States Constitution. The basis stated by appellant for such an argument is:
 "Prior to the adoption of the United States Constitution, the growth, possession, and use of marijuana in the American colonies was completely unregulated. At the time of the adoption of the United States Constitution marijuana production, possession, and use remained uncontrolled. The United States Constitution does not regulate, control, or prohibit the growth, possession or use of marijuana. In fact, the United States Constitution makes absolutely no mention of marijuana. Therefore, the people, under the 9th Amendment, retain the right to grow, possess, or use marijuana and no Alabama *Page 138 
statute has the authority to supersede the United States Constitution." (Appellant's brief, page 6).
The Ninth Circuit Court of Appeals, quoting from Justice Goldberg's concurring opinion in Griswold v. Connecticut,381 U.S. 479, 488-489, 85 S.Ct. 1678, 1685, 14 L.Ed.2d 510
(Goldberg, J., concurring, 1965) defined the rights protected by the Ninth Amendment as:
 "Rights under the Ninth Amendment are only those `so basic and fundamental and so deep-rooted in our society' to be truly `essential rights,' and which nevertheless, cannot find direct support elsewhere in the Constitution. Griswold v. Connecticut, 381 U.S. 479, 488-489, 491, 85 S.Ct. 1678, 1685, 14 L.Ed.2d 510 (Goldberg, J., concurring)." United States v. Choate, 576 F.2d 165 (9th Cir. 1978).
* * * * * *
 "In the exercise of its police power, a state may regulate the administration, sale, prescription, possession, and use of narcotic drugs . . . [a]nd the legislature is empowered to include marijuana among the drugs subject to regulation as narcotics." (citations omitted) 25 Am.Jur.2d Drugs, Narcotics, and Poisons (1976).
* * * * * *
 "The police power is an indispensable, essential, and vital attribute of sovereignty; indeed, some courts have viewed it as of higher status than an attribute of sovereignty, describing the power as constituting sovereignty, or as synonymous with sovereign power. In any case, it is clear that the power is a necessary attribute of every civilized government.
 "The police power is as old as the civilized governments which exercise it. The states existed before the Constitution of the United States, and they possessed the police power before the adoption of that organic document. Moreover, it has been held many times that the Constitution supposes the pre-existence of the police power, and must be construed with reference to that fact." (citations omitted) 16 Am.Jur.2d, Constitutional Law, § 360 (1979).
Appellant contends that the Alabama Uniform Controlled Substances Act violates Article 4, § 45 of the Alabama Constitution of 1901, because that act does not have a single subject. The Alabama Supreme Court in Boswell v. State,290 Ala. 349, 276 So.2d 592 determined that the Alabama Uniform Controlled Substances Act satisfies the constitutional requirement of having a single subject. Boswell v. State, supra; Reynolds v. State, 56 Ala. App. 509, 323 So.2d 394;Powers v. State, 49 Ala. App. 690, 275 So.2d 369; Sawyer v.State, 50 Ala. App. 490, 280 So.2d 196.
The next contention of appellant is that § 20-2-1, et seq. of the Code of Alabama (1975) provides for an unconstitutional delegation of legislative authority by allowing the State Board of Health to "revise and republish" schedules of controlled substances. § 20-2-32, Code of Alabama (1975); § 20-2-20, Codeof Alabama (1975).
The authority of the State Board of Health to add substances to or delete or reschedule substances to be controlled by the Alabama Uniform Controlled Substances Act has been upheld as not being an unconstitutional delegation of authority. McCurleyv. State, Ala.Cr.App., 390 So.2d 15, reversed on other grounds,390 So.2d 25 (Ala. 1980); Napier v. State, Ala.Cr.App.,338 So.2d 463; Cassell v. State, 55 Ala. App. 502, 317 So.2d 348.
The fact that the indictment of appellant failed to state whether the offense is a felony or misdemeanor does not make the indictment subject to a demurrer. The applicable statute on controlled substances, § 20-2-70 (a) Code of Alabama (1975), provides that possession of a controlled substance is a felony punishable by imprisonment of not less than two nor more than fifteen years and the defendant may be fined not more than $25,000.00. That statute also provides that possession of marijuana for personal use is only a misdemeanor punishable by imprisonment for not more than a year and a fine of not more than $1,000.00. *Page 139 
An indictment charging possession of marijuana includes the lesser offense of possession of marijuana for personal use. Leev. State, Ala.Cr.App., 350 So.2d 743; Butts v. State, Ala.Cr.App., 346 So.2d 497; Van Nostrand v. State, 56 Ala. App. 141, 319 So.2d 760. An indictment charging possession of marijuana, also, informs a defendant of the nature of the charges against him and fairly apprises him that he is charged with the lesser offense of possession of marijuana for personal use, a misdemeanor. Butts v. State, supra.
We find no error in the record and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.