TAYLOR, Presiding Judge.
The appellant, Billy Joe Felder, was convicted of trafficking in cocaine, conspiracy to traffick in cocaine, two counts of unlawful distribution of a controlled substance (cocaine), and conducting a drug trafficking enterprise, violations of §§ 13A-12-231(2), 13A-12-204, 13A-12-211, and 13A-12-233, Code of Alabama 1975. He was sentenced to 10 years in the state penitentiary for his conviction for trafficking in cocaine, and that sentence was enhanced 5 years pursuant to § 13A-12-250 because the sale occurred within 3 miles of a school; he was sentenced to 15 years for his conviction for conspiracy to traffick cocaine; to 5 years for his conviction on one count of distribution and to 10 years for his conviction on the other count of distribution, and both sentences were enhanced by an additional 5 years pursuant to § 13A-12-250; and to 25 years for his conviction for conducting a drug trafficking enterprise.
The state’s evidence tended to show that Billy Joe Felder, along with his siblings, Leola, Americain, and Eamestine, engaged in selling cocaine from their residence on Martin Patton Avenue in Montgomery. Based on complaints received from Felder’s neighbors, police placed the house under surveillance and conducted a series of controlled buys during August and September 1994 using undercover operatives. On September 23,1994, approximately 20 police officers executed a search warrant on the Felder house. When the police approached the house, several suspects fled on foot but were appre *1307 hended nearby. Officer Michael Drummond with the Montgomery Police Department testified that he inventoried the residence. He testified that most of the rooms were uninhabitable and were stacked with boxes and furniture and that there was no food in the kitchen. One room contained drug paraphernalia, guns, and a large quantity of drugs. Police arrested Billy Joe Felder, Leola Felder, Americain Felder, and Earnestine Felder.
I
The appellant first contends that his convictions for both trafficking in cocaine, § 13A-12-231(2), and conducting a drug trafficking enterprise, § 13A-12-233, subjected him to double jeopardy.
The United States Supreme Court established the test for evaluating double jeopardy claims in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The Court stated:
“[Wjhere the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.”
284 U.S. at 304, 52 S.Ct. at 182.
Applying the Blockburger test to the offenses for trafficking in cocaine and for conducting a drug trafficking enterprise, it is apparent that § 13A-12-233 incorporates § 13A-12-231 as one of its elements. Section 13A-12-233 reads, in part, as follows:
“(a) This section shall be known as the ‘Alabama Drug Trafficking Enterprise Act.’ For purposes of this section, a person is engaged in a criminal enterprise for the purpose of trafficking in illegal drugs if that person violates any provision of Section 1SA-12-2S1, and such violation is:
“(1) Undertaken by such person in. concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
“(2) From which such person obtains substantial income or resources.
[[Image here]]
“(c) Any person who engages in a criminal enterprise for the purpose of trafficking in illegal drugs shall be punished as follows:
[[Image here]]
“(3) In no event shall the term of imprisonment or the amount of fine imposed under this section be less than the corresponding term of imprisonment or fine authorized in Section 13A-12-231, for the underlying violation of that section, including application of the Habitual Offender Act, as determined by the type and amount of the particular illegal drugs involved.”
(Emphasis added.)
Our research reveals no cases in which an Alabama appellate court has applied the Alabama Drug Trafficking Enterprise Act. This court faced a problem similar to this one in McClendon v. State, 513 So.2d 102 (Ala.Cr.App.1986). In McClendon, this court held that a defendant could be convicted of both possession of marijuana for personal use and possession of controlled substances, even though the separate offenses did not meet the Blockburger test'. This court stated:
“Although neither the offenses at issue in Sears [v. State, 479 So.2d 1308 (Ala.Cr.App.1985)] nor the offenses here can be deemed ‘separate’ under Blockburger [v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ], multiple punishments for the offenses in both cases are justified based on the intent of the Alabama legislature to impose multiple punishments. ‘[T]he question under the Double Jeopardy Clause whether punishments are “multiple” is essentially one of legislative intent.’ Ohio v. Johnson, 467 U.S. 493, 499, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984). “With respect to cumulative *1308 sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.’ Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). ‘The question of what punishments are constitutionally permissible is no different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.’ Missouri v. Hunter, 459 U.S. at 368, 103 S.Ct. at 679 (quoting Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981) (emphasis added by the Missouri v. Hunter Court).
“The Blockburger test is not a constitutional component of the Fifth Amendment Double Jeopardy Clause, Missouri v. Hunter, 459 U.S. at 368, 103 S.Ct. at 678, but is merely a ‘ “rule of statutory construction,” and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.’ Missouri v. Hunter, 459 U.S. at 367, 103 S.Ct. at 679 (quoting Albernaz v. United States, 450 U.S. at 340, 101 S.Ct. at 1143 (emphasis added by the Missouri v. Hunter Court). The assumption underlying the Blockbur-ger rule is that ordinarily the legislative branch does not intend to punish the same offense twice, Ball v. United States, 470 U.S. 856, [861-63], 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985); Whalen v. United States, 445 U.S. 684, 691-92, 100 S.Ct. 1432, 1437-38, 63 L.Ed.2d 715 (1980).”
McClendon, 513 So.2d at 104-05. (Emphasis added.)
As Chief Justice Warren Burger stated when the United States Supreme Court rejected a double jeopardy argument in Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983):
“Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the ‘same’ conduct under Blockburger, a court’s task of statutory construction is at an end and the prosecutor may seek and the trial court may impose cumulative punishment under such statutes in a single trial.”
459 U.S. at 368, 103 S.Ct. at 679.
The Alabama legislature clearly intended that persons who violate both § 13A-12-231 and § 13A-12-233 should be punished cumulatively. Therefore, the appellant was not subjected to double jeopardy when he was convicted of both trafficking in cocaine and conducting a drug trafficking enterprise.
II
The appellant contends that the trial court erred in receiving into evidence numerous items discovered in the house at the time of the search including guns, drugs, cash, and other items, such as utility bills that bore the names of different members of the Felder family. Specifically, he contends that none of this evidence was relevant to the crimes for which he was charged. The appellant adopts and incorporates by reference those parts of the briefs of Leola, Earnestine Felder and Americain Felder discussing this issue.[1]
Initially, we observe that there were no objections made to the admission of most of the evidence introduced at trial.
Furthermore,
“Any orderly analysis, of admissibility should begin with a consideration of whether the evidence is material or of consequence to the determination of the action. Fruitful inquiry into this issue can only begin when the objecting party succeeds in forcing the opponent to announce the purpose for which the evidence is being offered. Once that purpose is identified, the materiality or ‘of consequence’ issue *1309 then becomes one of whether that purpose is an issue in the ease being litigated. Stated alternatively, as expressed in the Alabama Rules of Evidence:
“ ‘Rule 401. Definition of “Relevant Evidence”
“ ‘ “Relevant evidence” means evidence having any tendency to make the . existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.’
“This rule, combines the historically separate doctrines of relevancy and materiality. Combining the two concepts, however, should not cause either term to lose its independent meaning in the law of evidence. As observed in the advisory notes to Rule 401:
“‘Rule 401 merges the separate evi-dentiary concepts of materiality and relevancy. No relevant evidence is to be admitted unless its logical relevancy goes toward a fact or inference that is “of consequence to the determination of ■the action.” By use of this phrase, Rule 401 adopts the common law materiality concept, as that concept has evolved.’
“It is imperative for counsel, even after the adoption of Rule 401, to begin any evidentiary analysis with a consideration of materiality or whether the evidence is aimed at proving a fact that is of consequence to the action. Going first to relevancy, or whether the evidence possesses a tendency in logic to make a fact more or less probable, may have deadly results in some eases. First, it may cause one to overlook the issue ■ of whether the fact, upon which the evidence is offered, is of consequence to the action. Second, it places the objecting party in the intellectually awkward position of having to go back to argue that the fact is not of consequence or is immaterial after having lost an earlier objection that the evidence has no tendency to make the fact that is of consequence more probable'. Last, the party who begins by contending that the evidence is irrelevant — i.e., that the evidence does not render the fact more probable — may be argued to have waived any subsequently asserted immateriality objection based upon the assertion that the purpose is of no consequence to the action being litigated.”
C. Gamble, McElroy’s Alabama Evidence § 20.01 (5th ed.1996). (Emphasis original.)
Certainly the evidence was material to proving the state’s case of constructive possession. Alabama follows a liberal test to determine the relevancy of evidence. “[E]vi-dence is admissible if it has any probative value, however slight, upon a matter in the case.” McElroy’s Alabama Evidence, § 21.01(1).
As this court stated in Reed v. State, 401 So.2d 131 (Ala.Cr.App.), writ denied, 401 So.2d 139 (Ala.1981):
“In the case at bar the house was laden with marijuana amounting to over 24 pounds. It was packaged in various shapes and sizes and was accompanied by two sets of scales and three cigarette rollers. The introduction of the testimony of the phencyclidine was admissible as part of the res gestae and part of one occurrence. Flippo v. State, Ala.Cr.App., 359 So.2d 1184.
“Appellant also contends that it was error to allow testimony that three weapons and seventy-five hundred dollars ($ 7,500.00) in cash were found in the search....
“In this case, the guns and money like the phencyclidine were relevant to the case as part of the res gestae to show the ‘complete story’ and these items had probative value to establish that the possession of marijuana was not for personal use only. Flippo v. State, supra.”
Reed, 401 So.2d at 136.
The Alabama Supreme Court further extended the notion of a liberal test of materiality and relevancy in Rowell v. State, 666 So.2d 830 (Ala.1995), where evidence that a *1310 telephone pager and $800 were seized from the appellant’s car was found to be material and relevant in a prosecution for constructive possession of cocaine.
The items discovered were correctly received into evidence as part of the res gestae of the crimes for which he was charged and to establish the appellant’s connection to the house.
Ill
The appellant next contends that the trial court erred when it failed to give his requested jury instruction relating to the credibility of certain witnesses, informers in this case, who testified that they had problems with drug addiction. The appellant adopted and incorporated by reference those parts of the briefs of Leola and Amerieain Felder dealing with this issue.[2] The requested instruction was as follows:
“If an informer is also a narcotics addict, there are additional reasons why his testimony should be considered with great care. An addict has a constant need for a supply of drugs and for money to support his habit, and also may have abnormal fear of imprisonment in which this supply of drugs might be cut off. These are special circumstances which you may consider in weighing testimony of this kind. You, of course, may give the testimony such weight as you think proper, after considering all relevant circumstances.”
The appellant bases his argument on the Eleventh Circuit Pattern Jury Instructions: Criminal Cases (1985), which includes an instruction on witnesses known to be addicts. This instruction reads as follows:
“The testimony of some witnesses must be considered with more caution than the testimony of other witnesses.
“For example, a witness who was using addictive drugs during the time he or she testified about, or a witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have reason to make a false statement because he or she wants to strike a good bargain with the Government.
“So, while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.”
Eleventh Circuit Pattern Jury Instructions: Criminal Cases 36 (1985).
Alabama, however, has not adopted a pattern jury instruction relating to the credibility of witnesses in a criminal case, and Alabama is not bound by instructions suggested for the federal courts. There is a pattern jury instruction in civil cases that reads as follows:
“You are the sole judges of the evidence and of the credibility of the witnesses. You may accept or reject any part of the testimony of any witness and you should accept only the testimony you consider worthy of belief. In determining the weight to be accorded the testimony of any witness, you may consider the demeanor of the witness while on the witness stand; his apparent candor or evasion or the existence or non-existence of any bias or interest.”
Alabama Pattern Jury Instructions — Civil 404 (2d ed.1993).
The trial court in this case gave a lengthy instruction on the credibility of witnesses. The court stated:
“One of the things you have to decide when you go into the jury room is the credibility of the witnesses. That is, who you are going to believe. Now the law says that, you know, you decide the witness’s credibility in the court just like you decide a witness’s credibility outside the court. You decide a person’s credibility practically every day. Some of you come *1311 from different backgrounds, work experiences, etc.
“You talk to someone every day that you have to decide whether you believe what they are telling you at that time. It could be your wife, husband, your children, it could be a total strange[r], or your next door neighbor. How do you do that? For lack of a sophisticated way of saying it, I call it reading a person. What you really do is you just look at them and size them up. You decide, ‘Do I believe what you are telling me?’ You know how to do that outside of court. That’s the way you do it here.
“That is the reason why this witness stand is near you or you are near the witness stand, without any interruption or anything in between you. In addition to listening to the witnesses, the law says you have an opportunity to observe the witnesses as they testify, observe them, look at them, observe them, size them up, and decide whether you believe them.
“How does the law say you go about doing that? The law says you can look at the witness’s demeanor on the stand. You can take into consideration their behavior, whether or not they have an interest in the ease, whether or not they can get any benefit from the case, whether or not they have any bias, whether or not they show any prejudice. All of those things the law says you should look at to decide a witness’ credibility.
“Then the law says that if you find a witness credible but some part of the witness’s testimony not credible, then the law says you can disregard that witness’s testimony that you do not find to be credible or worthy of belief as long as you do not disregard any witness’s testimony arbitrarily or capriciously. Of course, if you find a witness who is not credible, then you can disregard all of that witness’s testimony.
“Now the law says, however, before you start discarding or disregarding any testimony, or casting off any testimony, and if you find any discrepancies in any testimony, you should marshal it altogether to make it speak the truth. To reconcile it all. Then when you do that, and you have done the best that you can, and if there is still some that stands out there that you just don’t find credible, then the law says you can disregard that and just move that away from your deliberations.”
The trial court’s instruction on credibility was more than adequate. David Westfield, an informant, testified that he had been addicted to cocaine and that he had gone through rehabilitation. Charlie Boswell, an informant, testified that he was addicted to cocaine and that he was in a treatment program at the time of trial. Boswell further testified that he had used illegal drugs within the two-month period before the trial. Boswell stated that he had acted as an informant during nine months of sobriety before his most current relapse. The jury was fully apprised that these witnesses had problems with drug addiction. Following the trial court’s instructions, the jury was free to disbelieve or to believe their testimony. The jury chose to believe their testimony. There was no error here in the court’s instructions or in the court’s refusing to give the requested instruction.
The appellant further contends that the trial court erred when it failed to correctly instruct the jury on reasonable doubt. Specifically, the appellant contends that the trial court should have instructed the jury that a reasonable doubt may arise from “any part of the evidence.” The trial court stated the following in its instructions:
“I will tell you now that reasonable doubt can arise from the evidence or from a lack of evidence ..., and you are to consider that in reaching your verdict.”
The trial court’s entire jury charge adequately conveyed the principle of reasonable doubt to the jury in this case. “A circuit judge may correctly refuse written requested jury charges if his oral charge covers the same legal principles.” Blackmon v. State, *1312 574 So.2d 1037, 1041 (Ala.Cr.App.1990). See also, § 12-16-13, Code of Alabama 1975; Rule 21.1, Ala.R.Crim.P.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.

. Rule 28(i), Ala.R.App.P., allows one appellant to adopt by reference any part of the brief of another appellant where multiple appellants are involved.

. See note 1, supra.